1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  CALIFORNIA DUMP TRUCK                No. 2:11-cv-00384-MCE-GGH
    OWNERS ASSOCIATION
12
              Plaintiff,
13
         v.                              MEMORANDUM AND ORDER
14
    MARY D. NICHOLS; Chairperson
15  of the California Air
    Resources Board; JAMES
16  GOLDESTENE, Executive Office
    of the California Air
17  Resources Board,

18            Defendants.

19                          ----oo0oo----

20

21       Plaintiff California Dump Truck Owners Association

22  ("Plaintiff") initiated this action against the Chairperson and

23  the Executive Officer of California's Air Resources Board

24  (hereafter collectively the "ARB") seeking to enjoin enforcement

25  of the ARB's Truck and Bus Regulation ("Regulation") on the basis

26  it is preempted by federal law.

27  ///

28  ///

                                   1

1 Presently before the Court is a Motion to Intervene ("Motion")

2 filed by the Natural Resources Defense Council, Inc. ("NRDC").

3 For the following reasons, the NRDC's Motion is GRANTED.[1]

4

5                                **BACKGROUND**

6

7        The Regulation, which is formally entitled "Regulation to

8 Reduce Emissions of Diesel Particulate Matter, Oxides of Nitrogen

9 and Other Criteria Pollutants from In-Use Heavy-Duty Disel-Fueled

10 Vhicles," 13 California Code of Regulations § 2025, sets fuel

11 emission standards for heavy-duty, diesel-fueled vehicles driven

12 on or designed to be driven on public highways and is intended to

13 reduce vehicle emissions.  Plaintiff's First Amended Complaint,

14 ¶ 4.  The Regulation is expected to drastically reduce fuel

15 emissions and to positively affect the health of California's

16 citizens.  Motion, 3:1-16.

17        The NRDC's organizational purpose "is to protect the

18 environment and public health, including the environment and

19 health of its members."  Id., 6:11-13.  It is a national non-

20 profit organization with more than 400,000 members nationwide and

21 more than 70,000 California members.  Id., 6:9-16.  According to

22 the NRDC, many of its California members reside "near

23 transportation corridors where vehicles covered by the Regulation

24 will travel."  Id., 6:15-16.

25 ///

26

27        [1] Because oral argument will not be of material assistance,
the Court ordered this matter submitted on the briefing.  E.D.
28 Cal. Local Rule 230(g).

1  While all NRDC members benefit from the Regulation's anticipated

2  reduction in vehicle emissions, and from the consequent reduction

3  in health risks, those members living near impacted freeways are

4  significantly affected by the rule.  Id., 6:17-21.  The NRDC thus

5  contends that, if Plaintiff is successful in its claims, "NRDC's

6  efforts to reduce diesel emissions across the state will be

7  significantly impaired and the health benefits of the Regulation

8  will be lost."  Id., 7:23-8:1.

9       As part of the NRDC's efforts, it spent over two years

10 actively advocating passage of the Regulation.  Id., 3:17-21.

11 More specifically, the "NRDC attended meetings with [ARB] staff

12 to help develop the Regulation, provided written comments to

13 [ARB] advocating that the Board strengthen the Regulation,

14 participated in public workshops on the Regulation, and testified

15 before [ARB] at the public hearing urging adoption of the

16 Regulation."  Id., 3:18-21.

17      "During the rulemaking process, NRDC disagreed with [ARB]

18 over many aspects of the Regulation, with NRDC advocating for

19 more stringent controls."  Id., 9:1-3.  Moreover, despite the

20 NRDC's objections, the ARB amended the Regulation in December

21 2010, weakening compliance provisions and delaying the

22 implementation schedule for some requirements.  Id., 9:3-6.  Even

23 during the course of this still-new litigation, the NRDC has

24 taken issue with the ARB's defense of the rule, pointing to

25 statements in the ARB's Answer as evidence of the ARB's

26 willingness to amend the Regulation even further to appease

27 Plaintiffs.

28 ///

1   Reply, 11:16-12:3 (quoting ARB's Answer, ¶ 27 ("Plaintiff's claim

2   will soon be moot because the [ARB] is presently considering

3   amending the regulation at issue to make it less stringent for

4   dump trucks and other heavy duty trucks and buses.")).   The NRDC

5   and the ARB have thus been at odds over the Regulation on a

6   number of occasions.  Motion, 9:9-10.

7        The NRDC now argues that it should be allowed to intervene

8   as a matter of right pursuant to Federal Rule of Civil Procedure

9   24(a)(2).[2]  Alternatively, Plaintiffs seek permissive

10  intervention under the provisions of Rule 24(b).

11       Plaintiff opposes the NRDC's Motion, though the ARB does

12  not.  According to Plaintiff, its suit presents only a "binary"

13  question: "either the regulation is preempted or it is not."

14  Opposition, 2:5.  Plaintiff thus argues that the NRDC will

15  unlikely be able to contribute anything meaningful to this

16  litigation because the law on preemption is settled, the relevant

17  facts are likely to be undisputed and settlement is unlikely.

18  Id., 2:8-12.

19

20                           **ANALYSIS**

21  **A.    Intervention as of Right**

22

23       An intervenor as a matter of right must meet all

24  requirements of Rule 24(a)(2) by showing:

25  ///

26  ///

27  ────────────────────

28       [2] All further references to "Rule" or "Rules" are to the
    Federal Rules of Civil Procedure unless otherwise noted.

                                4

(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

In evaluating whether these requirements are met, courts "are guided primarily by practical and equitable considerations." Further, courts generally "construe [the Rule] broadly in favor of proposed intervenors." "'A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.'"

United States v. City of Los Angeles, 288 F.3d 391, 397-98 (9th Cir. 2002) (citations omitted).

In its Opposition, Plaintiff challenges only whether the NRDC has a significantly protectable interest related to the litigation and whether, absent intervention, the ARB will adequately represent the NRDC's interests. Each of the aforementioned requirements articulated in Rule 24(a)(2) will nonetheless be addressed in turn below.

### 1.   NRDC's application to intervene is timely.

Three facts must be evaluated to determine whether a motion to intervene is timely:

(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation.

1   United States v. State of Washington, 86 F.3d 1499, 1503 (9th

2   Cir. 1996) (internal citations omitted).  "Timeliness is to be

3   determined from all the circumstances" in the court's "sound

4   discretion".  NAACP v. New York, 413 U.S. 345, 366 (1973).

5       Plaintiff does not dispute the timeliness of the NRDC's

6   request. Plaintiff filed its case in February, amended its

7   complaint at the beginning of April and no substantive

8   proceedings have been had.  The NRDC's Motion is therefore

9   timely.

10

11          **2.    The NRDC has a significant protectable interest
                     related to the subject matter of this litigation.**

12

13      A proposed intervenor has "a 'significant protectable

14  interest' in [the] action if (1) [it asserts] an interest that is

15  protected under some law, and (2) there is a 'relationship'

16  between [that] legally protected interest and the plaintiff's

17  claims." City of Los Angeles, 288 F.3d at 398 (quoting Donnelly

18  v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998)). "The 'interest'

19  test is not a clear-cut or bright-line rule, because '[n]o

20  specific legal or equitable interest need be established.'"  Id.

21  (quoting Greene v. United States, 996 F.2d 973, 976 (9th Cir.

22  1993)).  Under the interest test courts are required "to make a

23  'practical, threshold inquiry,' to discern whether allowing

24  intervention would be 'compatible with efficiency and due

25  process." Id. (citations omitted).

26  ///

27  ///

28  ///

1    An applicant may satisfy the requirement of a "significant

2  protectable interest" if resolution of the plaintiff's claims

3  will affect the applicant for intervention.  Montana v. United

4  States Envtl. Protection Agency, 137 F.3d 1135, 1141-42 (9th Cir.

5  1998).  A "significant protectable interest" exists if the

6  applicant asserts an interest protected by law and there is a

7  "relationship" between that interest and the plaintiff's claims.

8  Donnelly, 159 F.3d at 409.  The requisite interest need not be

9  direct as long as it may be impaired by the outcome of the

10 litigation.  Cascade Natural Gas Corp. v. El Paso Natural Gas

11 Co., 386 U.S. 129, 135-36 (1967).

12    The NRDC cites two protectable interests as the basis for

13 its intervention: 1) its members' interests in reducing the

14 public health impacts of diesel emissions in California; and

15 2) its interests in upholding regulations the adoption of which

16 they actively advocated.

17    First, the NRDC argues that numerous of its California

18 members live near transportation corridors where vehicles covered

19 by the Regulation travel.  These members will be affected the

20 most by the localized increase in emissions that will result from

21 a finding that the regulation is preempted.

22    In addition, the NRDC points out that it worked with the ARB

23 for over two years to develop the Regulation, and that the NRDC

24 advocated both the Regulation's adoption and strengthening.  The

25 NRDC attended meetings with ARB staff, provided written comments,

26 participated in public workshops and testified before ARB to urge

27 adoption of the Regulation.

28 ///

Both of the NRDC's articulated interests are sufficient to support intervention.  To reiterate, the NRDC is not obligated to identify a "specific legal or equitable interest."  It is enough that the NRDC members benefit from the challenged legislation by way of improved air quality and health.  <u>See</u> <u>Californians for Safe & Competitive Dump Truck Transp. v. Mendonca</u>, 152 F.3d 1184, 1189-90 (9th Cir. 1998) (union permitted to intervene in suit challenging state prevailing wage laws because union members had a significant interest in receiving those wages).  Even if that were not the case, however, the NRDC's interests are protected under numerous federal and state statutes, such as the Clean Air Act, 42 U.S.C. § 7401(b), the California Health and Safety Code §§ 39000-01, and the Regulation itself.  In addition, a public interest organization has a significantly protectable interest in defending legislation it supported.  <u>Idaho Farm Bureau Fed'n v. Babbitt</u>, 58 F.3d 1392, 1397 (9th Cir. 1995) ("A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported.");  <u>Sagebrush Rebellion, Inc. v. Watt</u>, 713 F.2d 525, 527 (9th Cir. 1983).  As such, the Court concludes here that a significant protectable interest has been demonstrated.

///

///

///

///

///

///

///

1
2
        **3.    Disposition of this matter, may, as a practical matter, impair or impede the NRDC's ability to protect its interests.**

3

4      According to the NRDC, a decision in Plaintiff's favor would
5  impair the NRDC's ability to protect its and its members'
6  interests in reducing the public health impacts of diesel
7  emissions in California as well as its interests in upholding
8  regulations the adoption of which they actively advocated.
9  Because of their proximity to highway corridors, some NRDC
10  members will suffer direct and immediate health consequences from
11  a ban on the enforcement of the Regulation's emissions reduction
12  standards.  Finally, a decision for Plaintiff will undermine the
13  NRDC's advocacy efforts in supporting the passage of the
14  Regulation over the last several years.  As the NRDC points out,
15  if the Regulation is struck down, it cannot "simply turn around
16  and adopt a similar regulation the next day that would result in
17  the same level of emissions reductions sorely needed for the
18  state to meet federal air quality standards."  Reply, 5:17-19.
19  Consequently, this threshold requirement for intervention is also
20  satisfied.

21

22        **4.    Existing parties may not adequately protect the NRDC's interests.**

23

24      When determining whether a proposed intervenor's interests
25  are adequately represented, the following factors are considered:
26  ///
27  ///
28  ///

9

1    (1) whether the interest of a present party is such
2    that it will undoubtedly make all the intervenor's
     arguments; (2) whether the present party is capable and
3    willing to make such arguments; and (3) whether the
     would-be intervenor would offer any necessary elements
4    to the proceedings that such other parties would
     neglect.

5    City of Los Angeles, 288 F.3d at 398 (citations omitted).

6        The burden of showing that existing parties may inadequately

7    represent the NRDC's interests is a minimal one.  As noted by the

8    Supreme Court, all the applicant needs to show is that "the

9    representation of [its] interest 'may be' inadequate."  Trbovich

10   v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972).

11   Any doubt as to whether the existing parties will adequately

12   represent the intervenor should be resolved in favor of

13   intervention.  Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special

14   Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993).

15       "The most important factor in determining the adequacy of

16   representation is how the interest compares with the interests of

17   existing parties.  When an applicant for intervention and an

18   existing party have the same ultimate objective, a presumption of

19   adequacy arises.  If the applicant's interest is identical to

20   that of one of the present parties, a compelling showing should

21   be required to demonstrate inadequate representation.  There is

22   also an assumption of adequacy when the government is acting on

23   behalf of a constituency that it represents.  In the absence of a

24   very compelling showing to the contrary, it will be presumed that

25   a state adequately represents its citizens when the applicant

26   shares the same interest."  Arakaki v. Cayetano, 324 F.3d 1078,

27   1086 (9th Cir. 2003) (internal citations and quotations omitted).

28   ///

1    While the NRDC and the ARB may share the same "ultimate

2 objective," namely defending the regulation against Plaintiff's

3 preemption argument, the parties' interests are neither

4 "identical" nor "the same."  <u>See</u> <u>Sw. Ctr for Biological Diversity</u>

5 <u>v. Berg</u>, 268 F.3d 810, 823 (9th Cir. 2001) (presumption of

6 adequacy can be overcome by showing the parties "do not have

7 sufficiently congruent interests").  In fact, their interests are

8 not only different, they are in some respects adverse.  The ARB

9 is a public agency that must balance relevant environmental and

10 health interests with competing resource constraints and the

11 interests of various constituencies (including Plaintiff's),

12 interests that can be, and here are, at odds with the NRDC's

13 interests.  Indeed, the ARB's mission is to "promote and protect

14 public health, welfare and ecological resources through the

15 effective and efficient reduction of air pollutants <u>while</u>

16 <u>recognizing and considering the effects on the economy of the</u>

17 <u>state</u>."  Motion, 8 n.9 (quoting the ARB's Mission, goal, and

18 Strategic Plan) (emphasis added).  The NRDC, on the other hand,

19 is not required to balance any economic impact against its own

20 considerations pertaining to health and environmental

21 protections.

22    Moreover, prior to the passage of the Regulation, the NRDC

23 and the ARB were directly at odds on a number of pertinent

24 issues.  Against the NRDC's objections, the ARB has already taken

25 steps to weaken the Regulation by amending certain compliance

26 provisions and pushing out compliance deadlines.

27 ///

28 ///

Likewise, in its answer, the ARB indicates it is further considering amending the Regulation to make its application "less stringent" for vehicles such as those owned by Plaintiff's members.   The NRDC argues that ARB's past practices, along with its current willingness to amend the Regulation, indicate the NRDC is willing to compromise unnecessarily to appease Plaintiff and to settle this action.   The NRDC has thus made a sufficient showing that its interests not only diverge from those of the ARB, but at times are adverse to the ARB's.

Based on the above analysis, the NRDC has therefore made the requisite showing that the ARB may not adequately represent its interests because the NRDC has provided evidence that: 1) as described above, the NRDC's interests are more "narrow and parochial" than those of the ARB, which is tasked not only with considering the environmental effects of its regulation, but also with considering the economic impact its rules will have on the state as a whole; and 2) despite the NRDC's protests, the ARB is willing to compromise, and potentially eviscerate, the Regulation in favor of Plaintiff's interests.[3]

---

[3] See California, ex rel. Bill Lockyer v. United States, 450 F.3d 436, 445 (9th Cir. 2006) (proposed intervenors overcame presumption of showing government would adequately represent their interests when intervenors had "more narrow, parochial interests" than the government and intervenors had presented evidence that the government would "take a position that actually compromise[d] (and potentially eviscerate[d]) the protections of the [challenged law]"); Golden Gate Rest. Ass'n v. City and County of San Francisco, 2007 WL 1052820, * (N.D. Cal.) (observing that the assumption of adequacy arising when a government agency acts on behalf of its constituents may be overcome by a showing that the proposed intervenor's interests are "more narrow and parochial than the interests of the public at large") (citing Californians For Safe and Competitive Dump
(continued...)

The requirement that existing parties may not adequately

represent the NRDC's interests is therefore satisfied.

After considering all of the intervention factors as set

forth above, the Court finds that the NRDC is entitled to

intervene as a matter of right in this action.


**B.   Permissive Intervention**


Even if the NRDC had failed to make the requisite showing

that it is entitled to intervene as of right, the Court finds

permissive intervention proper as well.  Permissive intervention

is appropriate if the moving party satisfies three requirements:

///

///

///

---

[3](...continued)
Truck Transp., 152 F.3d at 1190 ("because employment interests of
[union's] members were potentially more narrow and parochial than
the interests of the public at large, [union] demonstrated that
the representation of its interests by [the state] may have been
inadequate"); Forest Conservation Council v. U.S. Forest Serv.,
66 F.3d 1489, 1499 (9th Cir. 1995) (intervenor met its burden of
showing inadequate representation when government was "required
to represent a broader view than the more narrow, parochial
interests" of the intervenor)); In Defense of Animals v. U.S.
Dept. of Interior, 2011 WL 1085991, *3 (E.D. Cal.) (intervenor
made showing government may not adequately represent its
interests when intervenor "had specific interests...that may not
be shared by the Federal defendants, who represent a wide variety
of sometimes competing interests held by various segments of the
general public"); see also Arakaki, 324 F.3d 1087 (upholding
denial of intervention when the government made clear it would
make all necessary arguments to protect the would-be intervenors'
rights, no conflict prevented the state agency from making those
arguments, the would-be intervenor failed to show it would offer
any necessary elements not already offered in the litigation, and
similarly-situated parties had already been permitted to
intervene in the action).

"(1) the movant must show an independent ground for jurisdiction;
(2) the motion must be timely; and (3) the movant's claim of
defense and the main action must have a question of law and fact
in common." Venegas v. Skaggs, 867 F.2d 527, 529 (9th Cir.
1989), aff'd, 495 U.S. 82 (1990); see also Fed. R. Civ. Proc.
24(b).

This Court has an independent ground for jurisdiction under
28 U.S.C. §§ 1331 and 1367, the NRDC's defenses and the main
action raise common questions of law and fact, and the Court has
already found above the Motion is timely.  Plaintiff's only
arguments in opposition to permissive intervention are that the
NRDC will add nothing of substance to the litigation of this
matter and that Plaintiff will be prejudiced by having to
litigate against both "the awesome power of the State" and a
"well-funded, nationwide organization." Opposition, 6:19-25.  In
light of the NRDC's above-discussed interest in the merits of
this litigation, Plaintiff's objection is insufficient to warrant
denial of the Motion.  Indeed, were this Court to accept
Plaintiff's unsupported argument that it will be unduly burdened
by litigating against the state and an intervenor, there would be
almost no case in which permissive intervention would be granted.
See also City of Los Angeles, 288 F.3d at 404 ("[T]he idea of
'streamlining' the litigation...should not be accomplished at the
risk of marginalizing those...who have some of the strongest
interests in the outcome.").

///

///

///

14

1  Likewise, the NRDC has shown that it will bring a unique

2  perspective and expertise to this action that will not

3  necessarily, as Plaintiff suggests, duplicate the ARB's role.

4  Accordingly, the Court finds permissive intervention is

5  warranted.

6

7                              **CONCLUSION**

8

9       For the reasons just stated, the NRDC's Motion to Intervene

10 (ECF No. 10) is GRANTED.  The NRDC is ordered to file its Answer

11 not later than ten (10) days following the date this Order is

12 electronically filed.

13      IT IS SO ORDERED.

14
   Dated: May 20, 2011

15

16

17                          _____
                            MORRISON C. ENGLAND, JR.
18                          UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28