KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
SARA J. RUSSELL, State Bar No. 84704
Supervising Deputy Attorney General
NICHOLAS STERN, State Bar No. 148308
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 323-3840
 Fax: (916) 327-2319
 E-mail: Nicholas.Stern@doj.ca.gov
*Attorneys for Defendant
Mary D. Nichols, Chairperson of the California Air
Resources Board, and James Goldstene, Executive
Officer of the California Air Resources Board*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **CALIFORNIA DUMP TRUCK OWNERS ASSOCIATION,**<br><br>Plaintiff,<br><br>v.<br><br>**MARY D. NICHOLS, Chairperson of the California Air Resources Board, and JAMES GOLDSTENE, Executive Officer of the California Air Resources Board,**<br><br>Defendants.<br><br>**NATURAL RESOURCES DEFENSE COUNCIL, INC.,**<br><br>Defendant-Intervenor. | 2:11-CV-00384-MCE-GGH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MARY NICHOLS AND JAMES GOLDSTENE'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  January 26, 2012<br>Time:  2:00 p.m.<br>Dept:  7<br>Judge:  Honorable Morrison C. England, Jr.<br>Trial Date: June 3, 2013<br>Action Filed: February 11, 2011 |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................... 1
STATEMENT OF THE CASE ........................................................................................... 1
STANDARD OF REVIEW ................................................................................................. 4
ARGUMENT ....................................................................................................................... 4
    I.    The Presumption Against Preemption Applies to the Association's Claim. .......... 4
    II.    The Truck and Bus Regulation Falls Within The FAAAA's Safety Exception, Which Preserves States' Traditional Authority Over Safety. ................ 5
CONCLUSION .................................................................................................................... 9

i

Memorandum Of Points And Authorities In Support Of Defendants Mary Nichols And James Goldstene's Cross-Motion For Summary Judgment  (2:11-CV-00384-MCE-GGH)

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*
    559 F.3d 512 (D.C. Cir. 2009) ................................................................................ 8

*Californians for Safe and Competitive Dump Truck Transportation v. Mendonca*
    152 F.3d 1184 (9th Cir. 1998) ................................................................................ 5

*Celotex Corp. v. Catrett*
    477 U.S. 317, 106 S.Ct. 2548 (1986) ..................................................................... 4

*City of Columbus v. Ours Garage & Wrecker Serv., Inc.*
    536 U.S. 424, 122 S.Ct. 2226 (2002) ................................................................ 5, 6

*Exxon Mobil Corp. v. U.S. EPA*
    217 F.3d 1246 (9th Cir.2000) ................................................................................ 9

*Ginsburg v. Northwest, Inc.*
    653 F.3d 1033 (9th Cir. 2011) ............................................................................... 4

*Huron Portland Cement Co. v. City of Detroit*
    362 U.S. 440 80 S.Ct. 813 (1960) .......................................................................... 9

*Pacific Merchant Shipping Ass'n v. Goldstene*
    639 F.3d 1154 (9th Cir. 2011) ........................................................................... 4, 9

*Rice v. Santa Fe Elevator Corp.*
    331 U.S. 218, 67 S.Ct. 1146 (1947) ....................................................................... 4

*Rowe v. New Hampshire*
    552 U.S. 364, 128 S.Ct. 989 (2008) ............................................................. 5, 6, 9

*Tillison v. City of San Diego*
    406 F.3d 1126 (9th Cir. 2005) ............................................................................... 6

STATUTES

42 U.S.C.
    § 7409 .................................................................................................................... 2
    § 7409(b)(1) .......................................................................................................... 8
    § 7410 .................................................................................................................... 2

49 U.S.C.
    § 14501(c)(1) ..................................................................................................... 1, 5
    § 14501(c)(2)(A) ............................................................................................... 1, 5

ii

Memorandum Of Points And Authorities In Support Of Defendants Mary Nichols And James Goldstene's Cross-Motion For Summary Judgment  (2:11-CV-00384-MCE-GGH)

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**COURT RULES**

Federal Rule of Civil Procedure 56(a) ........................................................................... 4

**OTHER AUTHORITIES**

76 Federal Register
    40652 ................................................................................................................. 2, 5, 8

California Code Regulations tit. 13, § 2025 ................................................................... 1

iii

Memorandum Of Points And Authorities In Support Of Defendants Mary Nichols And James Goldstene's Cross-Motion For Summary Judgment  (2:11-CV-00384-MCE-GGH)

# INTRODUCTION

Plaintiff California Dump Truck Owners Association ("Association") filed suit against defendants Mary D. Nichols, Chairperson of the California Air Resources Board, and James Goldstene, Executive Officer of the California Air Resources Board, (collectively, the "Board") challenging the validity of the Board's Truck and Bus Regulation. Beginning in 2012, the Truck and Bus Regulation will result in substantial reductions in air pollution emitted from trucks and buses operating in California. Cal. Code Regs. tit. 13, § 2025. The Association moved for summary judgment, to which the Board is filing a separate opposition. Here, the Board is also filing its own cross-motion for summary judgment.

The Association's single claim is that the Truck and Bus Regulation is preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), which preempts state laws that are "related to" a price, route, or service of any motor carrier. 49 U.S.C. § 14501(c)(1). But the purpose of the FAAAA was to prevent states from interfering with Congress's decision to deregulate the competitive market for motor carrier services, not to prevent states from exercising their traditional authority to protect the health and safety of their citizens. As a result, the FAAAA has a safety exception that saves from preemption state laws adopted for the purpose of motor vehicle safety. 49 U.S.C. § 14501(c)(2)(A). The purpose of the Truck and Bus Regulation is to reduce dangerous air pollution emissions from motor vehicles. Controlling air pollution to protect the health and safety of citizens is a traditional area over which states exercise their police power. So, even if the Regulation were "related to" prices, routes, or services, it would be saved from preemption by the FAAAA's safety exception.[1]

# STATEMENT OF THE CASE

There are nearly one million heavy-duty vehicles (vehicles with a gross vehicle weight rating greater than 14,000 pounds) that travel California's highways each year, over eighty

---

[1] In its opposition to the Association's motion for summary judgment, the Board argues not only that the Truck and Bus Regulation falls within the safety exception, but also that the Regulation is not within the scope of the preemption provision in the first place, since it is not "related to" the prices, routes, or services of motor vehicles. Here, in the Board's cross-motion, the Board raises only the safety exception argument, because the Association is highly unlikely to be able dispute the material facts that support it.

1

Memorandum Of Points And Authorities In Support Of Defendants Mary Nichols And James Goldstene's Cross-Motion For Summary Judgment (2:11-CV-00384-MCE-GGH)

percent of which are diesel fueled. (Declaration of Todd Sax in Support of Defendants Mary Nichols and James Goldstene's Opposition to Motion for Summary Judgment ["Sax Decl."], at 4:11-13.) These vehicles are the largest sources of emissions from all mobile sources of diesel particulate matter ("PM") and oxides of nitrogen ("NOx") in California. (*Id.* at 4:14-20.)

Diesel PM is a toxic air contaminant and causes cancer. (Declaration of Linda Smith in Support of Defendants Mary Nichols and James Goldstene's Opposition to Motion for Summary Judgment ["Smith Decl."], at 5:1-3.) In addition, diesel PM and NOx contribute to ambient levels of PM composed of particles 2.5 microns or less in diameter ("PM2.5"). (Sax Decl., at 3:24-26.) PM2.5 causes premature death, as well as increased hospitalizations and emergency room visits for heart and lung diseases. (Smith Decl., at 3:3-17.) The Board estimates that, in California, 9,200 people die prematurely every year because of exposure to PM2.5. (*Id.* at 4:5-8.)

NOx is also a precursor to ozone. (Sax Decl., at 4: 25-26.) Exposure to ozone causes breathing problems, lung tissue damage, and premature mortality in people with lung and heart disease. (Smith Decl., at 4:11-23.) It also causes increased asthma rates for children and adolescents. (*Id.*)

The federal Clean Air Act directs the United States Environmental Protection Agency ("EPA") to establish national ambient air quality standards to protect public health and safety. 42 U.S.C. § 7409. Pursuant to the Clean Air Act, EPA established national ambient air quality standards for PM2.5 and ozone, which states are required to attain through the development of state implementation plans. 42 U.S.C. §§ 7409, 7410; Approval and Promulgation of Implementation Plans, 76 Fed. Reg. 40652, 40654 (proposed July 11, 2011) (to be codified at 40 C.F.R. pt. 52); (Sax Decl., at 3:15-19). Two areas in California, the South Coast Air Basin and the San Joaquin Valley Air Basin, are not in attainment for both PM2.5 and ozone. (*Id.* at 3:20-21.) The Clean Air Act requires California to attain these standards by 2014 for PM2.5 and 2023 for ozone.[2] (*Id.* at 3:21-23.) Significant reductions in emissions of diesel PM and NOx from heavy-duty vehicles are necessary for the South Coast and San Joaquin Valley Air Basins to

---

[2] The particular ozone standard that must be attained by 2023 is the eight-hour ozone standard – that is, ozone measured over an eight-hour period. (Smith Decl., 2:25-27.)

2

Memorandum Of Points And Authorities In Support Of Defendants Mary Nichols And James Goldstene's Cross-Motion For Summary Judgment  (2:11-CV-00384-MCE-GGH)

attain the national ambient air quality standards for PM2.5 and ozone. (*Id.* at 4:22 – 5:4.) The Board estimates that attaining the PM2.5 standard in California will reduce the number of premature deaths caused by exposure to PM2.5 by 2,700 every year. (Smith Decl., at 4:7-10.)

In 2008, the Board adopted the Truck and Bus Regulation, section 2025, title 13, of the California Code of Regulations, to reduce emissions of diesel PM and NOx from trucks and buses operating in California. (Declaration of Tony Brasil in Support of Defendants Mary Nichols and James Goldstene's Opposition to Motion for Summary Judgment ["Brasil Decl."], at 3:23-25, Exh. 1, at 11.) On September 19, 2011, as a result of the national recession that began in 2007, the Board amended the Truck and Bus Regulation to reduce the costs of complying with the Regulation. (*Id.* at 4:25 – 5:15.) The amended Regulation was approved by the California Office of Administrative Law and become law on December 14, 2011. (*Id.* at 5:16-17, Exh. 2.) This brief's discussion of the Regulation's compliance deadlines refers to the amended version of the Regulation.

The Truck and Bus Regulation has two essential components. First, it requires vehicles to have diesel particulate filters ("PM filters") to reduce emissions of diesel PM. Model year 2007 and newer diesel trucks have PM filters as part of their standard equipment. Older diesel trucks need to be either retrofitted with PM filters or replaced with a model year 2007 (or newer) engine by the applicable deadline. Second, the Regulation requires vehicles to be upgraded to model year 2010 engines (or engines with equal or lower emissions) to reduce emissions of NOx by the applicable deadline. (*Id.* at 5:22-28.)

To meet the federal Clean Air Act deadline for attaining the PM2.5 standard, the Truck and Bus Regulation requires most heavy-duty trucks operated in California to have PM filters by 2014. To reduce NOx emissions in order to meet the ozone standard, the Regulation requires nearly all heavy-duty truck engines operated in California to be replaced with 2010 model year engines by 2023. (*Id.* at 6:1-5.) The Regulation also contains numerous provisions designed to reduce the cost of compliance. (*Id.* at 6:6 – 8:15.)

The cost for fleets of trucks to comply with the Truck and Bus Regulation will vary, depending in part on the fleet's normal vehicle replacement practices. (*Id.* at 8:23-24.) Over the

3

Memorandum Of Points And Authorities In Support Of Defendants Mary Nichols And James Goldstene's Cross-Motion For Summary Judgment  (2:11-CV-00384-MCE-GGH)

life of the Regulation, from 2012 to 2023, the Board estimates that costs as a percentage of annual revenue for a moving company fleet will be about 0.15%, and for a fleet in the transportation sector about 0.3%. (*Id.* at 11:8-12.) Fleets of dump trucks may have higher costs as a percentage of revenue, but the Board estimates that they would still be less than 2%. (*Id.* at 14:7-9, 17:1-2.)

The Truck and Bus Regulation is expected to reduce total emissions of diesel PM in California by forty-five percent in 2014, as compared to the anticipated level of emissions in 2014 absent the Regulation. (Sax Decl., at 5:8-10.) This is a reduction of seven tons of diesel PM emissions per day. (*Id.*) It is also expected to reduce total emissions of NOx in California by eighty percent by 2023, as compared to NOx emissions in 2005; a reduction of seven hundred tons of NOx emissions per day. (*Id.*, at 5:18-20.)

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).

## ARGUMENT

**I. THE PRESUMPTION AGAINST PREEMPTION APPLIES TO THE ASSOCIATION'S CLAIM.**

The starting point for preemption analysis is the presumption that state laws dealing with matters traditionally within a state's police powers are not to be preempted unless Congress's intent to do so is clear and manifest. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152 (1947); *Ginsburg v. Northwest, Inc.*, 653 F.3d 1033, 1036 (9th Cir. 2011). Given the historic presence of state law in the area addressed by the Truck and Bus Regulation – air pollution – the presumption applies here. *See Pacific Merchant Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1167 (9th Cir. 2011).

4

Memorandum Of Points And Authorities In Support Of Defendants Mary Nichols And James Goldstene's Cross-Motion For Summary Judgment (2:11-CV-00384-MCE-GGH)

## II. THE TRUCK AND BUS REGULATION FALLS WITHIN THE FAAAA'S SAFETY EXCEPTION, WHICH PRESERVES STATES' TRADITIONAL AUTHORITY OVER SAFETY.

The FAAAA preempts state laws that "relate to" motor carrier prices, routes, or services. 49 U.S.C. § 14501(c)(1);[3] *Rowe v. New Hampshire*, 552 U.S. 364, 370, 128 S.Ct. 989, 995 (2008). However, the FAAAA does not preempt states from exercising their traditional police power over safety. Since the purpose of the Truck and Bus Regulation is safety, it falls within the safety exception of the Act's preemption provision. *See* 49 U.S.C. § 14501(c)(2)(A).[4] This interpretation of the safety exception is in harmony with the federal Clean Air Act, which requires states to develop implementation plans to meet national ambient air quality standards. In fact, EPA has already proposed approving the Truck and Bus Regulation as a critical component of California's implementation plan. Approval and Promulgation of Implementation Plans, 76 Fed. Reg. at 40654.

The purpose of the FAAAA was to deregulate motor carriers and to even the playing field with the airline carriers, which had already been deregulated. *Californians for Safe and Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184, 1187 (9th Cir. 1998). The preemption provision, 49 U.S.C. § 14501(c)(1), prevents states from defeating this deregulatory purpose by adopting their own economic regulations that would interfere with competition among the motor carriers. *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 440-41, 122 S.Ct. 2226, 2236 (2002). But Congress did not intend to prevent states from exercising their traditional state police power over safety:

---

[3] Section 14501(c)(1) states in full: "General rule.--Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property."

[4] The relevant portion of the safety exception states: "Paragraph (1) – (A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization . . . ."

> Congress' clear purpose in § 14501(c)(2)(A) is to ensure that its preemption of States' economic authority over motor carriers of property, § 14501(c)(1), "not restrict" the preexisting and traditional state police power over safety.

*Id.* at 439, 122 S.Ct. at 2236; *see also Rowe*, 552 U.S. at 375, 128 S.Ct. at 997.

In determining whether the safety exception applies, courts examine the purpose of the state law in question. *Tillison v. City of San Diego*, 406 F.3d 1126, 1129 (9th Cir. 2005). In *Tillison*, the Ninth Circuit applied the safety exception to a statute which provided that, before a towing company may tow a vehicle from private property without the vehicle owner's permission, the company must obtain written authorization from the property owner. To determine whether the statute fit within the safety exception, the court examined whether the legislature had adopted the statute for the purpose of motor vehicle safety. *Id.* at 1129. It found that the statute's purpose was motor vehicle safety: to protect the vehicle owner and the public from towing mistakes, which may lead to dangerous confrontations; to protect the owner's family from being stranded at a dangerous location; to protect against false vehicle theft reports, which waste law enforcement's limited resources; and to protect against unnecessary hazardous tows. *Id.* at 1130-31. Thus, in upholding the statute, the court refused to apply the narrowest possible construction of the scope of the safety exception – even preventing fights between tow truck operators and vehicle owners was found to be a safety concern within the scope of the exception. *Id.* at 1129. And the court confirmed that the safety exception preserves state power in a field that the states have traditionally occupied. *Id.*

The Board's purposes in adopting the Truck and Bus Regulation were to reduce the amount of air pollution emitted from trucks and buses and to help California attain national ambient air quality standards in order to protect the health of Californians and comply with the Clean Air Act. (Mary Nichols and James Goldstene's Statement Of Undisputed Material Facts In Support Of Cross-Motion for Summary Judgment ["S/F"] ¶ 12.) These purposes are evident in the following excerpts from the Board's findings from its resolution adopting the Regulation:

> In-use on-road diesel vehicles that operate in the State – whether based in California or not – are significant contributors of diesel PM and NOx emissions, which California must reduce to attain the ozone and PM2.5 [National Ambient Air Quality Standards or NAAQS] and to reduce the health risks associated with such pollutants;

6

Memorandum Of Points And Authorities In Support Of Defendants Mary Nichols And James Goldstene's Cross-Motion For Summary Judgment (2:11-CV-00384-MCE-GGH)

> The regulation approved herein would achieve the necessary emission reductions to achieve the NAAQS for ozone and PM2.5 ….
>
> The regulation approved herein would significantly reduce diesel PM and NOx emissions and associated cancer, premature mortality, and other adverse health effects statewide;….

(Brasil Decl., Exh. 1, at 11;[5] *see also* Brasil Decl., at 3:25 – 4:4.) Trucks and other diesel-fueled vehicles subject to the Truck and Bus Regulation emit diesel PM and NOx. (S/F ¶ 7.) They contribute more emissions of NOx and PM2.5 to California's ambient air than any other mobile source category. (*Id.*) Diesel PM is a toxic air contaminant. (S/F ¶¶ 1-2.) Diesel PM and NOx contribute to ambient levels of PM2.5. (S/F ¶¶ 3-4.) NOx is also a precursor to ozone. (S/F ¶ 3.) The dangers posed by PM2.5 and ozone include premature death, emergency room visits for people suffering from heart and lung diseases, and asthma. (S/F ¶¶ 5-6.)

The federal Clean Air Act directs the EPA to establish national ambient air quality standards to protect public health and safety. (S/F ¶ 8.) Pursuant to the Clean Air Act, EPA established national ambient air quality standards for PM2.5 and ozone, which states are required to attain through the development of state implementation plans. (S/F ¶ 9.) Two areas in California, the South Coast Air Basin and the San Joaquin Valley Air Basin, are not in attainment

---

[5] In addition to these findings, the resolution included the following recitals:

> [T]he Board identified particulate matter (PM) emissions from diesel fueled engines (diesel PM) as a toxic air contaminant ….

***

> [T]he Legislature found, among other things, that a number of areas within the state have not attained NAAQS for ozone and PM2.5; that serious public health impacts, including thousands of premature deaths per year, occur in the state as a result of ozone and PM2.5 levels exceeding the NAAQS ….

***

> WHEREAS, in-use on-road heavy-duty diesel vehicles operating in the state are among the largest contributors to PM2.5 and ozone forming emissions ….

(Brasil Decl., Exh. 1, at 1, 3-4, 5.)

7

Memorandum Of Points And Authorities In Support Of Defendants Mary Nichols And James Goldstene's Cross-Motion For Summary Judgment (2:11-CV-00384-MCE-GGH)

for both PM2.5 and ozone.  (S/F ¶ 10.)  The Clean Air Act requires California to attain these standards by 2014 for PM2.5 and 2023 for eight-hour ozone.  (S/F ¶ 11.)

The Board's purposes are genuinely responsive to its concern for safety.  "Safety" is defined as "freedom from exposure to danger : exemption from hurt, injury, or loss."  Webster's Third New Int'l Dictionary 1998 (unabridged ed., 2002).  Here, the danger is exposure to truck emissions, and the Regulation's purpose is to exempt the public from hurt and injury caused by this exposure.  Likewise, the national ambient air quality standards that the Regulation is designed to help attain are required to be based on considerations of safety:

> National primary ambient air quality standards … shall be ambient air quality standards the attainment and maintenance of which in the judgment of the Administrator, based on such criteria and allowing an adequate margin of *safety*, are requisite to protect the public health.

42 U.S.C. § 7409(b)(1) (emphasis added); *see also Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*, 559 F.3d 512, 526 (D.C. Cir. 2009).  Therefore, the intent of the Truck and Bus Regulation is genuinely responsive to the Board's motor vehicle safety concern:  the danger caused by truck and bus emissions.

The EPA confirmed that safety is the purpose of the Truck and Bus Regulation when it recently proposed approving the Regulation as part of California's state implementation plan for achieving national ambient air quality standards under the federal Clean Air Act.  Approval and Promulgation of Implementation Plans, 76 Fed. Reg. at 40654.  EPA stated that the Truck and Bus Regulation, along with two other regulations for reducing diesel PM, plays "a critical role" in California's efforts to meet national standards for ozone and PM2.5.  *Id.*

If the FAAAA's safety exception were construed narrowly, and the FAAAA were found to preempt the Truck and Bus Regulation, then California would be unable to comply with the federal Clean Air Act's mandate to attain these national ambient air quality standards.  Since nothing in the FAAAA expressly demands such a narrow construction of the safety exception, there is no reason to invent such disharmony between the two federal acts.  Instead, the safety exception should be construed to include state laws intended to protect the public from the harmful air pollution effects of motor carriers.

8

Controlling air pollution is one of the traditional areas over which states exercise their police power to protect the health and safety of their citizens. As the U.S. Supreme Court stated, "Legislation designed to free from pollution the very air that people breathe clearly falls within the exercise of even the most traditional concept of what is compendiously known as the police power." *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 442 80 S.Ct. 813, 815 (1960); *see also Pacific Merchant Shipping Ass'n*, 639 F.3d at 1167; *Exxon Mobil Corp. v. U.S. EPA*, 217 F.3d 1246, 1255 (9th Cir.2000) ("Air pollution prevention falls under the broad police powers of the states"). Since Congress did not intend to restrict traditional state police power, the Regulation falls within the scope of the FAAAA's safety exception.

The safety concern here is distinguishable from that in *Rowe*. The safety concern in *Rowe* arose from the tobacco transported by the trucks, not from the trucks themselves. 552 U.S. at 374, 128 S.Ct. at 997. Here, by contrast, the safety issue arises from air pollution emitted from the trucks themselves. And here, unlike in *Rowe*, the Regulation plays a critical role in the state's efforts to comply with another federal law, the Clean Air Act, as discussed above. Therefore, *Rowe* is not controlling here, and the Truck and Bus Regulation is within the scope of the safety exception to the FAAAA's preemption provision.

## CONCLUSION

Based on facts that cannot reasonably be disputed, the Truck and Bus Regulation fits within the FAAAA's safety exception as a matter of law. Therefore, the Board submits that its motion for summary judgment should be granted.

9

Memorandum Of Points And Authorities In Support Of Defendants Mary Nichols And James Goldstene's Cross-Motion For Summary Judgment  (2:11-CV-00384-MCE-GGH)

1   Dated: December 22, 2011

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
SARA J. RUSSELL
Supervising Deputy Attorney General

*/s/ Nicholas Stern*
NICHOLAS STERN
Deputy Attorney General
*Attorneys for Defendant
Mary D. Nichols, Chairperson of the
California Air Resources Board, and James
Goldstene, Executive Officer of the
California Air Resources Board*

SA2011300613
10799938.doc

10