DAVID PETTIT (SBN 67128)
dpettit@nrdc.org
MELISSA LIN PERRELLA (SBN 205019)
mlinperrella@nrdc.org
MORGAN WYENN (SBN 270593)
mwyenn@nrdc.org
NATURAL RESOURCES DEFENSE COUNCIL
1314 Second Street
Santa Monica, California 90401
Telephone: (310) 434-2300
Facsimile: (310) 434-2399

Attorneys for Defendant-Intervenor
Natural Resources Defense Council, Inc.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

CALIFORNIA DUMP TRUCK OWNERS ASSOCIATION,

Plaintiff,

v.

MARY D. NICHOLS, Chairperson of the California Air Resources Board; and JAMES GOLDSTENE, Executive Officer of the California Air Resources Board,

Defendants,

NATURAL RESOURCES DEFENSE COUNCIL, INC.,

Defendant-Intervenor.

Case No. 2:11-CV-00384-MCE-GGH

DEFENDANT-INTERVENOR NATURAL RESOURCES DEFENSE COUNCIL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

Date: January 26, 2012
Time: 2:00 p.m.
Judge: Hon. Morrison C. England, Jr.
Courtroom: 7

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

- A. Diesel Exhaust From Trucks Threatens Air Quality And Poses A Significant Public Health Threat .......... 2
- B. The Truck And Bus Rule .......... 4
- C. Procedural History .......... 6

III. STANDARD OF REVIEW .......... 6

IV. THE FAAA DID NOT EXPRESSLY OR IMPLIEDLY REPEAL CALFORNIA'S AUTHORITY UNDER THE CLEAN AIR ACT TO ADOPT THE TRUCK AND BUS RULE .......... 7

- A. Congress Expressly Reserved California's Authority To Adopt The Rule Under The Clean Air Act .......... 9
- B. Congress Intended To Preempt "Economic Regulation" When It Adopted The FAAA, Not Repeal Provisions In The Clean Air Act .......... 10

V. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdu-Brisson v. Delta Airlines*,
128 F.3d 77 (2nd Cir. 1997)........................................................................................ 13

*Allway Taxi v. City of New York*,
340 F. Supp. 1120 (S.D.N.Y.), *aff'd*, 468 F.2d 624 (2nd Cir. 1972)....................................... 10

*Ass'n of Am. R.R.s v. S. Coast Air Quality Mgmt. Dist.*,
622 F.3d 1094 (9th Cir. 2010) ........................................................................................ 13

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
152 F.3d 1184 (9th Cir. 1998) .................................................................................... 7, 11

*Cardenas v. McLane Foodservices*,
Case No. 10-473, 2011 WL 2714430 (C.D. Cal. July 8, 2011)................................................ 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................................... 6, 7

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
498 F.3d 1031 (9th Cir. 2007) .......................................................................................... 9

*Exxon Mobil Corp. v. US EPA*,
217 F.3d 1246 (9th Cir. 2000) ...................................................................................... 7, 9

*Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*,
634 F.3d 206 (2nd Cir. 2011)........................................................................................ 13

*Huron Portland Cement Co. v. City of Detroit*,
362 U.S. 440 (1960)........................................................................................................ 7

*J.E.M. Ag Supply v. Pioneer Hi-Bred Int'l*,
534 U.S. 124 (2001)...................................................................................................... 11

*Margolis v. Ryan*,
140 F.3d 850 (9th Cir. 1998) ............................................................................................ 6

*Maryland v. Louisiana*,
451 U.S. 725 (1981)........................................................................................................ 7

*Medtronic v. Lohr*,
518 U.S. 470 (1996).......................................................................................................... 7

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992)........................................................................................................ 12

*Morton v. Mancari*,
417 U.S. 535 (1974)........................................................................................................ 11

*Omya v. Vermont,*
33 Fed. Appx. 581 (2nd Cir. 2002).......................................................................... 13, 14

*Omya v. Vermont,*
80 F.Supp.2d 211 (D.Vt. 2000)........................................................................................ 13

*Rowe v. New Hampshire Motor Transport Ass'n*,
552 U.S. 364 (2008)..................................................................................................... 8, 12

**FEDERAL STATUTES**

42 U.S.C. § 7401(a)(3).......................................................................................................... 9
42 U.S.C. § 7401(b)(1) ......................................................................................................... 9
42 U.S.C. § 7409.................................................................................................................. 9
42 U.S.C. § 7410.................................................................................................................. 9
42 U.S.C. § 7416........................................................................................................... 10, 14
42 U.S.C. § 7509(b)(1) ......................................................................................................... 9
42 U.S.C. § 7521................................................................................................................ 10
42 U.S.C. § 7543................................................................................................................ 14
42 U.S.C. § 7543(a) ........................................................................................................... 10
42 U.S.C. § 7543(b) ........................................................................................................... 10
42 U.S.C. § 7543(d) ................................................................................................. 10, 12, 14
42 U.S.C. § 7550(3) ............................................................................................................. 9
42 U.S.C. § 7550(5) ............................................................................................................. 9
49 U.S.C. § 14501(c) ...................................................................................................... 6, 12
49 U.S.C. § 14501(c)(1)............................................................................................... 1, 8, 11

49 U.S.C. § 41713(b)(1) ........................................ 12

FRCP 56 ........................................ 1

FRCP 56(c) ........................................ 6

FRCP 56(e) ........................................ 7

**STATE REGULATIONS**

13 Cal. Code. Reg. § 2025 ........................................ 1

**FEDERAL REGISTER**

76 Fed. Reg. 40652 (July 11, 2011) ........................................ 9, 10, 14

**OTHER AUTHORITIES**

Fed. R. Evid. 201(b) ........................................ 11

H.R. Conf. Rep. No. 103-677 ........................................ 11

Local Rule 260 ........................................ 1

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 260, Defendant-Intervenor Natural Resources Defense Council ("NRDC") submits this memorandum of points and authorities in support of its cross-motion for summary judgment against Plaintiff California Dump Truck Owners Association ("CDTOA"). NRDC moves for summary judgment on the sole count alleged by CDTOA in its First Amended Complaint, which asserts that California's Truck and Bus Rule[1] is preempted by the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c)(1) ("FAAA").

## I. INTRODUCTION

The Clean Air Act assigns to the states—not any federal agency—the authority to reduce emissions from "in-use" trucks, that is, trucks that are no longer "showroom new." The California Air Resources Board ("CARB") adopted the Truck and Bus Rule pursuant to that authority. The rule will clean-up the largest mobile source of air pollution in the state by modernizing aging diesel vehicles, and is critical to California's efforts to achieve federal air quality standards. This case is about whether Congress intended to take away California's authority to adopt the Truck and Bus Rule when it enacted the FAAA. Congress did not.

The FAAA was enacted against a regulatory backdrop of preexisting environmental laws, including the federal Clean Air Act. The FAAA seeks to enhance competition in the motor carrier industry, and to level the playing field between the trucking industry and the deregulated air carrier industry. Because the Clean Air Act expressly reserves California's authority to adopt the Truck and Bus Rule, CDTOA's preemption claim can only succeed if Congress, when enacting the FAAA, repealed provisions in the Clean Air Act. There is no evidence, however, let alone the "overwhelming evidence" necessary, demonstrating that such a repeal occurred. For these reasons, NRDC's motion should be granted as a matter of law.

---

[1] The "Truck and Bus Rule" is formally entitled "Regulation to Reduce Emissions of Diesel Particulate Matter, Oxides of Nitrogen and Other Criteria Pollutants, from In-Use Heavy-Duty Diesel-Fueled Vehicles," 13 Cal. Code. Reg. § 2025. The rule is attached to the Declaration of Melissa Lin Perrella ("Lin Perrella Decl.") as Exhibit A.

## II. STATEMENT OF FACTS

### A. Diesel Exhaust From Trucks Threatens Air Quality And Poses A Significant Public Health Threat

As demonstrated in the figures below,[2] in 2010, diesel trucks and buses were the largest source of air pollution in the state, accounting for over 30% of statewide emissions of oxides of nitrogen ("NOx") and about 40% of diesel particulate matter ("PM") emissions from all mobile source emissions, including cars. Lin Perrella Decl., Ex. C at 3. Absent the Truck and Bus Rule, trucks and buses will continue to be the largest source of mobile source emissions in 2020. *Id.*

**Truck Contribution to 2010 Statewide Mobile Source Emissions (Particulate Matter and NOx Without Regulations)**

[2] These figures replicate the charts created by CARB in its rule making documents. Lin Perrella Decl., Ex. C at 3.



**Truck Contribution to 2020 Statewide Mobile Source Emissions (Particulate Matter and NOx Without Regulations)**

Diesel PM contributes to ambient concentrations of fine particulate matter ("PM 2.5"), which is "associated with premature mortality, aggravation of respiratory and cardiovascular disease, asthma exacerbation, chronic and acute bronchitis and reductions in lung function." *Id.*, Ex. B at 9. In 1998, the California Air Resources Board ("CARB") identified diesel PM as a toxic air contaminant, and concluded that diesel PM is by far the largest contributor of known ambient air toxics cancer risk in California. *Id.*, Ex. C at 24. Approximately 63,000 to 80,000 premature deaths occur each year in the U.S that are related to exposure to PM2.5. *Id.* Approximately 9,200 of these deaths occur annually in California. *Id.* Reducing emissions to meet federal air quality standards would result in 2,700 fewer premature deaths annually. *Id.*

NOx emissions lead to formation of ozone and PM2.5. *Id.*, Ex. B at 10. Exposure to ozone can result in "reduced lung function, increased respiratory symptoms, increased airway hyperreactivity, and increased airway inflammation. Exposure to ozone is also associated with premature death, hospitalization for cardiopulmonary causes, emergency room visits for asthma, and restrictions in activity." *Id.*

The United States Environmental Protection Agency ("EPA") has established federal clean air standards for PM 2.5 and ozone. *Id.*, Ex. C at 21. Regions in California, including the

San Joaquin Valley Air Basin ("SJVAB")[3] and South Coast Air Basin ("SCAB")[4], violate EPA's "PM 2.5" and "8-hour ozone" standards, which must be attained by 2014 and 2023, respectively. *Id.*, Ex. C at 21–22. In order to meet the PM2.5 standard in these two regions, NOx emissions will need to be reduced by approximately 50%. To achieve the 8-hour ozone standard, such emissions will need to be reduced between 75% to 88%. *Id.*, Ex. C at 22. CARB views the Truck and Bus Rule as a "key strategy" towards meeting these standards. *Id.*

**B. The Truck And Bus Rule**

CARB adopted the first iteration of the rule in December 2008, and amended the rule in September 2011 in response to the recession. *See id.*, Ex. E at 3–4. On December 14, 2011, the amendments were approved by the Office of Administrative Law, rendering the rule "final." The amendments relaxed the rule's environmental mandates, and reduced compliance costs by 50% over the first five years of the rule and by approximately 60% over the life of the regulation. *Id.*, Ex. C at 6. All references herein to the Truck and Bus Rule or the "rule" refer to the amended rule.

The rule will reduce emissions from aging diesel trucks and buses that operate in California by requiring exhaust and vehicle retrofits and accelerated vehicle turnover. The end result is that cleaner, less polluting vehicles will operate on California's roadways. By 2020, nearly every truck operating in California will have a PM filter, *id.*, Ex. C at 45, and by 2023, all trucks operating in California will meet 2010 model year emissions standards. *Id.*, Ex. C at 5. The rule applies to nearly one million diesel trucks and buses, and to a number of industry sectors, including construction, for-hire transportation, manufacturing, retail and wholesale trade, vehicle leasing and rental, bus lines, and agriculture. *Id.*, Ex. B at 1, Ex. C at 1.

---

[3] The SJVAB includes eight counties: San Joaquin, Stanislaus, Merced, Madera, Fresno, Kings, Tulare, and portions of Kern County. San Joaquin Valley Air Pollution Control District, About the District, http://www.valleyair.org/General_info/aboutdist.htm (last visited Dec. 21, 2011).

[4] The SCAB includes Orange County and portions of Los Angeles, Riverside and San Bernardino counties. This area is home to over 16.8 million people—about half the population of the entire state, and is one of the smoggiest regions in the nation. South Coast Air Quality Management District, About South Coast AQMD, http://www.aqmd.gov/aqmd/index.html (last visited Dec. 21, 2011).

With respect to "heavier trucks,"[5] the rule begins phasing-in on January 1, 2012, and provides fleets with two primary ways to comply: adhere to a compliance schedule by engine model year or utilize a "phase-in option." *Id.*, Ex. A §§ 2025(g)(1) & (i). The rule also provides a number of exemptions and "credits" that can be utilized to ease compliance. These compliance paths are summarized below.

Under the "Engine Model Year" schedule, the deadline for installation of PM filters and engine replacements depends on the model year of the truck. *Id.*, Ex. A § 2025(g)(1), Ex. D. For example, 1996–1999 trucks are required, starting January 2012, to have a PM filter.

| Engine Model Year Schedule for Heavier Trucks | |
|---|---|
| **Engine Year** | **Requirement from January 1,2012** |
| Pre-1994 | No requirements until 2015, then 2010 engine |
| 1994-1995 | No requirements until 2016, then 2010 engine |
| 1996-1999 | PM filter from 2012 to 2020, then 2010 engine |
| 2000-2004 | PM filter from 2013 to 2021, then 2010 engine |
| 2005-2006 | PM filter from 2014 to 2022, then 2010 engine |
| 2007-2009 | No requirements until 2023, then 2010 engine |
| 2010 | Meets final requirements |

These same trucks must then be upgraded 8 years later with a vehicle meeting 2010 emissions standards. Trucks with a 1995 model year engine have no requirements until 2016. By 2023, trucks and buses must meet 2010 emissions standards with few exceptions. *Id.*, Ex. D.

Alternatively, fleets can utilize a "phase-in" option whereby the fleet decides which vehicles to retrofit or replace, regardless of engine model year. *Id.*, Ex. A § 2025(i), Ex. D. Fleets utilizing this option would need to ensure that a certain percentage of their trucks have PM filters by each year shown in the table below. For example, by January 2012, a fleet would need to have PM filters on 30% of its trucks. This option counts 2007 model year and newer engines originally equipped with PM filters toward compliance and would reduce the overall number of retrofit PM filters needed. *Id.*, Ex. D. Beginning January 1, 2020, all trucks would need to meet "Engine Model Year" requirements for heavier trucks. *Id.*, Ex. A § 2025(i)(1).

| Phase-In Option for Heavier Trucks | |
|---|---|
| **Compliance Date** | **Vehicles w/PM Filters** |
| Jan. 1, 2012 | 30% |
| Jan. 1, 2013 | 60% |
| Jan. 1, 2014 | 90% |
| Jan. 1, 2015 | 90% |
| Jan. 1, 2016 | 100% |

[5] "Heavier trucks" are those with a gross vehicle weight rating greater than 26,000 pounds. CDTOA members' trucks fall into the "heavier truck" category.

The rule also provides a number of credits or exemptions. For example, owners of small fleets (3 vehicles or less), construction trucks that travel 20,000 or less miles per year, fleets that have downsized since 2006, and vehicles that operate in less polluted areas of the state can extend the time they have to comply with the rule. *Id.*, Ex. A §§ 2025(h), (j)(1), (p)(1), (p)(2).

CARB estimates that the rule will cost approximately $1.5 billion during the first five years of the rule, and $2.2 billion over the life of the rule. *Id.*, Ex. C at 56. Costs per industry sector or vehicle owner vary greatly and depend on, for example, the replacement cycle for individual vehicles. *Id.* A number of funding programs are available to help truck owners comply with the rule. *Id.*, Ex. C at 64.

The rule will substantially improve air quality. The rule and a related regulation for "drayage trucks" will reduce statewide PM emissions from trucks and buses by 50% from baseline levels in 2014. *Id.*, Ex. C at 45. Statewide NOx emissions will be reduced by 36% in 2023. *Id.*, Ex. C at 46. The rule will prevent approximately 3,500 premature deaths statewide, and is critical to California meeting federal air quality standards. *Id.*, Ex. C at 6, 22.

### C. Procedural History

In February 2011, CDTOA filed its Compliant. In March 2011, it filed its First Amended Complaint. CDTOA alleges one count: violation of the Supremacy Clause of the United States Constitution based on preemption of the Truck and Bus Rule under the FAAA, section 14501(c). In November 2011, CDTOA moved for a preliminary injunction to which NRDC and Defendants opposed. This Court denied CDTOA's motion on December 16, 2011.

## III. STANDARD OF REVIEW

A motion for summary judgment is properly granted when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. § 56(c). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and to demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat a motion for summary judgment, the non-moving party must demonstrate that "the evidence is such that a reasonable jury could return a verdict in his or her favor." *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998). A

party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but "must, by affidavits or as otherwise provided in this rule, set out specific facts showing that there is a genuine issue for trial," Fed. R. Civ. Pro. 56(e). Further, the non-moving party who bears the burden of proving an element essential to the case must make a showing sufficient to establish a genuine issue of fact with respect to the existence of that element of the case or be subject to summary judgment. *Celotex Corp.*, 477 U.S. at 322.

## IV. THE FAAA DID NOT EXPRESSLY OR IMPLIEDLY REPEAL CALFORNIA'S AUTHORITY UNDER THE CLEAN AIR ACT TO ADOPT THE TRUCK AND BUS RULE

"[T]he purpose of Congress is the ultimate touchstone in every preemption case. As a result, any understanding of the scope of a pre-emption statute must rest primarily on a fair understanding of congressional purpose." *Medtronic v. Lohr*, 518 U.S. 470, 485 (1996) (internal citations and quotations omitted).[6] This litigation presents a case of first impression concerning the intersection of California's authority to regulate air pollution under the Clean Air Act and the regulation of motor carriers under the FAAA.

The FAAA provides:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any

---

[6] To prevail on its preemption claim, CDTOA must overcome a well-established presumption that Congress did *not* intend to displace state law. *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). This is particularly the case when the state law deals with matters traditionally within a state's police powers. *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1186 (9th Cir. 1998). The Supreme Court has long recognized that:

> Legislation designed to free from pollution the very air that people breathe clearly falls within the exercise of even the most traditional concept of what is compendiously known as the police power. In the exercise of that power, the states and their instrumentalities may act, in many areas of interstate commerce and maritime activities, concurrently with the federal government.

*Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 442 (1960); *see also Exxon Mobil Corp. v. U.S. Envtl. Prot. Agency*, 217 F.3d 1246, 1255 (9th Cir. 2000). To overcome the presumption against preemption, CDTOA must establish that Congress exhibited a "clear and manifest intent" to preempt the Truck and Bus Rule. *Mendonca*, 152 F.3d at 1187. CDTOA cannot meet this burden.

> motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). As discussed below, by enacting the FAAA, Congress deregulated the motor carrier industry and preempted state "economic regulation." Congress adopted the FAAA against the backdrop of longstanding federal environmental laws, including the Clean Air Act, which expressly reserves state authority to enact regulations like the Truck and Bus Rule, and requires states to meet federally established clean air standards. There is no evidence that Congress intended the FAAA to restrict California's authority to reduce air pollution, or to comply with federal mandates to do so. Nevertheless, CDTOA's complaint asks this Court to construe FAAA preemption so broadly that a repeal of federal authority to control air pollution from trucks is effectuated. CDTOA cannot meet the burden imposed on it to prevail on such a claim.

Below, in Section A, we outline how the Truck and Bus Rule was adopted pursuant to authority expressly reserved to states under the federal Clean Air Act, and how the rule implements that act. In Section B, we discuss how the FAAA preempts state "economic regulation," and did not repeal preexisting environmental laws. As a result, while FAAA preemption claims generally involve a fact based inquiry into whether a state law "significantly" affects prices, routes or services in more than a "tenuous, remote, or peripheral . . . manner," *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 371 (2008), the Court need not conduct that inquiry to decide CDTOA's claim. Because the Truck and Bus Rule is expressly authorized by the Clean Air Act and there is no evidence that Congress intended to repeal that authority when it adopted the FAAA, NRDC's motion may be granted as a matter of law.[7]

---

[7] CDTOA has also moved for summary judgment. Notably, while NRDC's motion can be granted as a matter of law, CDTOA's motion cannot. For CDTOA's motion to prevail, CDTOA must establish that (1) the Truck and Bus Rule falls within the scope of state laws Congress intended to preempt when it enacted the FAAA, and (2) the rule "significantly" affects motor carrier prices, routes and services, which necessitates a fact based inquiry. *See Cardenas v. McLane Foodservices*, Case No. 10-473, 2011 WL 2714430, at *8 (C.D. Cal. July 8, 2011) (holding that FAAA preemption claim presented a "genuine issue of material fact"). In this motion, we show that CDTOA cannot prove the first point above, as a matter of law. In our opposition to CDTOA's motion for summary judgment, we show how CDTOA has failed to meet its evidentiary burden posed by the second point.

### A. Congress Expressly Reserved California's Authority To Adopt The Rule Under The Clean Air Act

California adopted the Truck and Bus Rule to implement the federal Clean Air Act. The rule was enacted pursuant to federal authority that expressly reserves the power of states to adopt "operational" restrictions for "in-use"[8] motor vehicles, and to comply with federal mandates to achieve clean air standards—the deadlines of which are fast approaching.

The Clean Air Act serves to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). Under that act, Congress created a federal-state partnership to combat air pollution, in which the federal government sets standards for how clean the air must be, and state and local governments devise and carry out "State Implementation Plans" to meet these standards. *See* 42 U.S.C. §§ 7409, 7410. As a result, the Clean Air Act places the "primary responsibility" for achieving clean air in the hands of state and local governments. *See id.* § 7401(a)(3); *Exxon Mobil Corp.*, 217 F.3d at 1250; *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1042 (9th Cir. 2007) ("[t]he overriding purpose of the Clean Air Act is to force the states to do *their* job in regulating air pollution effectively so as to achieve baseline air quality standards") (emphasis in original).

If a state fails to meet federal air quality standards, it is exposed to stiff penalties, including the withholding of federal highway funds. *See, e.g.*, 42 U.S.C. § 7509(b)(1). Currently, the SJVAB and SCAB do not meet federal air quality standards. Lin Perrella Decl., Ex C at 21–22. California is relying on the rule to attain those standards and avoid potential sanctions. *Id.* CARB included the rule within its State Implementation Plan, and EPA is poised to approve it. Approval and Promulgation of Implementation Plans, 76 Fed. Reg. 40652 (proposed July 11, 2011) (to be codified at 40 C.F.R. pt. 52) (EPA stating "we know of no obstacle under Federal or State law in CARB's ability to implement the regulation[]").

---

[8] "In-use" motor vehicles are distinguishable from "new" motor vehicles. "New motor vehicles" are vehicles "the equitable or legal title to which has never been transferred to an ultimate purchaser." 42 U.S.C. § 7550(3). The "ultimate purchaser" is "the first person who in good faith purchases such new motor vehicle or new engine for purposes other than resale." *Id.* § 7550(5).

Congress expressly reserved state authority to adopt regulations like the Truck and Bus Rule under two sections of the Clean Air Act. First, under section 7416, Congress generally reserved *all* State rights to control and regulate air pollution except those rights specifically preempted by the Clean Air Act. 42 U.S.C. § 7416. With respect to motor vehicles, the Clean Air Act preempts states, absent a waiver from EPA, from adopting emissions standards relating to the control of emissions from *new* motor vehicles, including trucks. *Id*. § 7543(a), (b). The Truck and Bus Rule does not establish emissions standards for new vehicles. 76 Fed. Reg. at 40658 (concluding that the Truck and Bus Rule is not preempted under the Clean Air Act).[9] CDTOA does not allege that the rule is preempted by the Clean Air Act.

Second, under section 7543(d) of the Clean Air Act, Congress expressly stated that "[n]othing in this part shall preclude or deny to any State or political subdivision thereof the right otherwise to control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles." The Truck and Bus Rule is an exercise of authority expressly reserved to California under section 7543(d). There are no limitations on this authority. And in fact, only states have authority to adopt operational restrictions for "in use" motor vehicles; Congress did not provide that authority to EPA, or any other federal agency. *See* 42 U.S.C. § 7521 (providing EPA only with authority to promulgate "emissions standards" for "new" motor vehicles).

The Clean Air Act demonstrates that Congress knows how to preempt state air pollution regulations for trucks when it wants to. It also shows that with respect to regulations for "in use" vehicles, Congress expressly preserved state authority. CDTOA fails to acknowledge that the FAAA was adopted against this regulatory backdrop.

**B. Congress Intended To Preempt "Economic Regulation" When It Adopted The FAAA, Not Repeal Provisions In The Clean Air Act**

Given the authority reserved to states in sections 7416 and 7543(d) of the Clean Air Act, CDTOA's preemption claim only survives if Congress repealed that authority when it adopted the

---

[9] The Truck and Bus Rule is not preempted by the Clean Air Act because the rule establishes emissions standards for "in-use" trucks (as opposed to new vehicles) and the burden for retrofits does not fall on original equipment manufacturers. 76 Fed. Reg. at 40658 (citing *Allway Taxi v. City of New York*, 340 F. Supp. 1120 (S.D.N.Y.), *aff'd*, 468 F.2d 624 (2nd Cir. 1972)).

FAAA. The FAAA, however, does not *expressly* repeal provisions within the Clean Air Act, and CDTOA cannot show that any such repeal was *implicit*.

Implied repeals are strongly disfavored and exist only where two federal statutes are "irreconcilable." *Morton v. Mancari*, 417 U.S. 535, 549–50 (1974). Not surprisingly, therefore, the Supreme Court requires "overwhelming evidence" that Congress intended to effectuate an implied repeal, and such intent must be "clear and manifest." *Id.* at 551; *J.E.M. Ag Supply v. Pioneer Hi-Bred Int'l*, 534 U.S. 124, 137 (2001). This "stringent" standard is rarely satisfied, *J.E.M. Ag Supply*, 534 U.S. at 142, and exists because "courts are not at liberty to pick and choose among congressional enactments." *Morton*, 417 U.S. at 551. Here, the evidence overwhelmingly demonstrates that Congress intended California to have authority to adopt the rule.

First, the purpose of section 14501(c)(1) of the FAAA was to prevent a patchwork of state economic regulation that hindered efficient ground transportation, and placed motor carriers at a competitive disadvantage with air-based shippers, who had been deregulated years prior. *Mendonca*, 152 F.3d at 1187. Congress characterized the type of state actions preempted under the FAAA as "economic regulations," which included "entry controls, tariff filing and price regulation, and [regulation of] the types of commodities carried." H.R. Conf. Rep. No. 103-677, at 86–88.[10] The conferees criticized state regulations that required companies that wanted to change their prices to go through costly and lengthy proceedings in every state in which they operated. *Id*. at 87. They also highlighted the inefficiency created when rates for intrastate shipments exceeded rates for comparable distances across state lines—resulting in companies inefficiently shipping goods across state lines and back to the state of origin to avoid the higher rates for purely in-state shipments. *Id*. at 87–88. Neither the FAAA itself nor its legislative history mentions the Clean Air Act or suggests that Congress intended to repeal state authority to regulate air pollution.

Second, the Clean Air Act places primary responsibility for reducing air pollution in the hands of state and local governments. *Supra* at 9. To find that the FAAA implicitly repealed provisions of the Clean Air Act would strip California of its authority to clean up the largest single

[10] This Court may take judicial notice of the FAAA's legislative history. Fed. R. Evid. 201(b).

source of mobile source emissions in the state, and notwithstanding federal mandates to do so. It would also mean that large sources of air pollution will go *completely* unregulated. *Supra* at 10 (only states have authority to adopt operational restrictions for motor vehicles; Congress did not provide that authority to EPA or any other federal agency). There is no evidence that Congress gave motor carriers a "free pass" to pollute. Congress' longstanding recognition of the critical role states play in reducing air pollution indicates that it did not take away—and especially *implicitly* take away—the very tools states have to achieve clean air.

Third, the federal government's support for the Truck and Bus Rule within the Clean Air Act and EPA's recent proposed approval of the rule distinguishes this case from instances where state laws were deemed preempted under the FAAA and ADA.[11] For example, in *Rowe*, the Supreme Court held that a state statute that required delivery of tobacco products within the state to be made with a "recipient-verification service" that confirmed that the purchaser was of legal age was preempted under the FAAA. 552 U.S. at 368, 372–73. There was no indication in that case, however, that the state statute was expressly authorized by federal law. *Id.* at 377–78 (concurring) (stating that "no comprehensive federal law currently exists to prevent tobacco sellers from exploiting the underage market," and that there exists a "large regulatory gap" created by FAAA preemption and the absence of Congressional efforts to effectively thwart youth access to tobacco through purchases over the internet). Similarly, while the Supreme Court in *Morales v. Trans World Airlines, Inc*., 504 U.S. 374 (1992), held that state guidelines governing the content and format of advertising for airfares was preempted by the ADA, both the Department of Transportation and Federal Trade Commission objected to those guidelines "on pre-emption and policy grounds." *Id*. at 379. The point is that while *Rowe* and *Morales* may be interpreted to broadly preempt state laws under the FAAA, the applicability of those cases to the present facts are limited at best. Here, unlike in *Rowe* and *Morales*, the federal interest in upholding the state action is "clear and manifest."[12]

---

[11] FAAA, section 14501(c) mirrors the ADA's preemption provision, 49 U.S.C. § 41713(b)(1). Courts rely on ADA cases to interpret section 14501(c). *See, e.g.*, *Rowe*, 552 U.S. at 370.

[12] Because of the authority expressly reserved for states in section 7543(d) of the Clean Air Act, and EPA's proposal to approve the rule, this case is distinguishable from *Ass'n of American R.R.s*

Fourth, the only court that has considered the validity of a state environmental law against a FAAA preemption claim upheld the state law. In *Omya v. Vermont*, 33 Fed. Appx. 581 (2nd Cir. 2002), the plaintiff owned a quarry in Vermont and transported ore from its quarry to its processing plant using Route 7, a major federal highway. *Omya v. Vermont*, 80 F.Supp.2d 211, 214 (D.Vt. 2000). Plaintiff contended that it needed to make up to 170 daily truck trips on Route 7 to meet its processing capacity and anticipated customer demand. *Id.* at 214. The legal question in *Omya* was whether an order issued by the Vermont Environmental Board ("Act 250"), which restricted the number of truck trips plaintiff could make on Route 7 to 115 per day, was preempted by the FAAA. *Id*.; 33 Fed. Appx. at 583–84. The Second Circuit held that it was not and affirmed the district court's order granting Vermont's motion to dismiss:

> Section 14501 . . . aims to preempt state economic regulation. Act 250 does not speak directly to prices, routes, or services of motor carriers, and is a land use statute intended to protect Vermont's environmental resources with an eye towards . . . preserving lands, when possible, that have special values to the public. . . The permit restriction imposed on plaintiff seeks to achieve non-economic goals that bear no relationship to the regulation of competition. We cannot conclude that it was the clear and manifest purpose of Congress . . . in enacting Section 14501 to preempt a non-economic regulation with the limited impact on "route" that the permit restriction imposes.

*Id*. at 584 (internal citations and quotations omitted); *see also Abdu-Brisson v. Delta Airlines*, 128 F.3d 77, 84 (2nd Cir. 1997) ("generally applicable tax, environmental, [and] blue sky laws . . . as a general matter are not preempted under the ADA."); *Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 210 (2nd Cir. 2011) (ADA does not preempt state environmental laws).

Like the state order in *Omya*, the rule does not speak directly to motor carrier prices, routes or services. It reduces air pollution from trucks and achieves non-economic goals that bear no

---

*v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094 (9th Cir. 2010). In that case, the railroads argued that air district regulations that reduced locomotive and rail yard emissions were preempted by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"). *Id*. at 1096. The air district argued that the Clean Air Act reserved local authority to enact the challenged regulations and the court needed to "harmonize" ICCTA with the Clean Air Act. *Id*. at 1097–98. The court held that until the regulations were included in CARB's State Implementation Plan and approved by EPA, it did not have two federal statutes to harmonize. *Id*. at 1098.

relationship to the regulation of competition. *See Omya*, 33 Fed. Appx. at 584. Further, the case against preemption here is even better than it was in *Omya* given that, as discussed above, the federal government has expressed its support for the rule in the Clean Air Act, 42 U.S.C. §§ 7416, 7543, and as part of California's State Implementation Plan, 76 Fed. Reg. 40652.

## V.  CONCLUSION

California adopted the Truck and Bus Rule pursuant to authority expressly reserved to it under sections 7416 and 7543(d) of the Clean Air Act. There is no evidence, let alone "overwhelming evidence," that Congress intended to repeal that regulatory authority when it enacted the FAAA. EPA is poised to approve the Truck and Bus Rule as part of California's State Implementation Plan, and has provided its initial determination that the rule is valid under federal law. No court has ever invalidated state air pollution regulations based on FAAA preemption, let alone regulations expressly authorized by the Clean Air Act. And if CDTOA's claim is successful, state efforts to meet federal air quality standards will be significantly undermined while air pollution from motor carriers will go unregulated. Because CDTOA cannot establish that Congress intended to disrupt the federal government's long-standing regulatory scheme for controlling air pollution by repealing preexisting environmental laws, NRDC's motion should be granted as a matter of law, and CDTOA's complaint should be dismissed in its entirety.

Dated:  December 22, 2011

David Pettit
Melissa Lin Perrella
Morgan Wyenn
Natural Resources Defense Council, Inc.

By:  /s/Melissa Lin Perrella
Attorneys for Defendant-Intervenor Natural Resources Defense Council, Inc.