1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

18

CALIFORNIA DUMP TRUCK
OWNERS ASSOCIATION,

                Plaintiff,

    v.

MARY D. NICHOLS; Chairperson of
the California Air Resources Board;
JAMES GOLDESTENE, Executive
Office of the California Air Resources
Board,

              Defendants.

No. 2:11-cv-00384-MCE-GGH

**<u>MEMORANDUM AND ORDER</u>**

19

----oo0oo----

20

      This case arises out of a challenge by Plaintiff California Dump Truck Owners

21

Association ("CDTOA" or "Plaintiff") to the enforcement by Defendants Mary D. Nichols,

22

Chairperson of the California Air Resources Board, and James Goldstene, Executive

23

Officer of the California Air Resources Board, (collectively "ARB") of California's

24

"Regulation to Reduce Emissions of Diesel Particulate Matter, Oxides of Nitrogen and

25

Other Criteria Pollutants, from In-Use Heavy-Duty Diesel-Fueled Vehicles," Cal. Code

26

Regs. tit. 13, § 2025 ("the Truck and Bus Regulation" or "Regulation"), on the basis that

27

the Regulation is preempted by federal law.

28

///

1

1      Currently pending before the Court are Cross-Motions for Summary Judgment filed by

2      CDTOA, ARB, and Defendant-Intervenor Natural Resources Defense Council ("NRDC")

3      regarding Plaintiff's claim that California's Regulation is preempted by federal law.  (ECF

4      Nos. 34, 43-9, and 45.)

5      After the Court took the Motions under submission, the United States

6      Environmental Protection Agency ("EPA") issued a decision approving California's State

7      Implementation Plan ("SIP"), which incorporates the Truck and Bus Regulation.  See

8      Final Rule, Approval and Promulgation of Implementation Plans, 77 Fed. Reg. 20308-01

9      (Apr. 4, 2012) (codified as 40 C.F.R. pt. 52).  This Court then ordered supplemental

10      briefing first as to the impact of the EPA decision on the merits of this case and, second,

11      as to whether the EPA is a necessary and indispensable party.  (See ECF Nos. 61 and

12      68.)  On September 6, 2012, after the parties had submitted their supplemental briefs,

13      the Court held an oral hearing on the matter.  After careful consideration of the parties'

14      arguments and the relevant legal authority, the Court concludes that, for the reasons set

15      forth below, it cannot retain jurisdiction over this action in light of EPA's approval of the

16      Truck and Dump Regulation as part of California's SIP.  Alternatively, even if the Court

17      were to retain jurisdiction, this action should be dismissed because EPA is a necessary

18      and indispensable party under Federal Rule of Civil Procedure 19.

19

20      **BACKGROUND**

21

22      **A.**     **Procedural Background**

23

24      CDTOA initiated this action on February 11, 2011, and filed its operative First

25      Amended Complaint ("FAC") on April 6, 2011.  (ECF Nos. 1 and 12.)  CDTOA requests

26      the Court "issue a declaration that the Truck and Bus Regulation is preempted by federal

27      law" and "issue a preliminary and permanent injunction prohibiting ARB from enforcing"

28      the Regulation.  (ECF No. 12, at 6.)

1  By Memorandum and Order dated May 20, 2011, this Court granted NRDC leave to

2  intervene as Defendant.  (ECF No. 18.)  Just over one month later, on July 5, 2012,

3  CDTOA filed a motion for summary judgment.[1]  (ECF No. 22.)  On December 22, 2012,

4  ARB and NRDC filed their respective Cross-Motions for Summary Judgment.  (ECF

5  Nos. 43-9 and 45.)

6  Since the effective date of the Regulation was January 1, 2012, which is prior to

7  the time the dispositive motions could be resolved, CDTOA filed a Motion for Preliminary

8  Injunction seeking to temporarily enjoin enforcement of the Regulation until such time as

9  the dispositive motions could be heard and decided.  (ECF No. 31, at 1.)  The Court

10  denied Plaintiff's request for injunctive relief via a written Memorandum and Order dated

11  January 27, 2012.  (ECF No. 54.)

12  On May 24, 2012, NRDC filed a Notice of Supplemental Authority advising the

13  Court that the EPA had issued an "Approval and Promulgation of Implementations

14  Plans; California Air Resources Board – In-Use Heavy-Duty Diesel-Fueled Truck and

15  Bus Regulation, and Drayage Truck Regulation," 77 Fed. Reg. 20308-01 (Apr. 4, 2012),

16  by which the EPA took final action to approve revisions to California's SIP.[2]  (ECF No.

17  59.)  Pursuant to that EPA decision, "[f]inal approval of the two regulations and

18  incorporation of them into the California SIP [made] them federally enforceable."

19  77 Fed. Reg. 20308.  Given the EPA's indication that the Truck and Bus Regulation is

20  now federally enforceable, this Court issued an Order on May 30, 2012, requiring

21  supplemental briefing as to the impact of the EPA decision on the parties' positions in

22  this case.  (ECF No. 61.)

23  ///

24

25  [1] CDTOA's motion, filed on July 5, 2012, was denied by the Court without prejudice to re-filing pursuant to the parties' stipulation.  (ECF Nos. 29, 30.)  CDTOA refiled its Motion on November 17, 2011,

26  and set it for hearing on January 26, 2012.  (ECF No. 34.)  That hearing was later continued to February 9, 2012.  (ECF No. 53.)  Subsequently, the Court determined that oral argument would not be of material

27  assistance to the Court and submitted the matter on the briefing pursuant to E.D. Cal. R. 230(g).  (ECF No. 57.)

28  [2] EPA's approval of California's SIP became effective on May 4, 2012.  77 Fed. Reg. 20308.

3

1    Once the parties provided the additional briefing, the Court set this matter for hearing

2    and once again ordered further briefing, this time on the question of whether the EPA is

3    a necessary, and perhaps indispensable, party to this litigation.  (ECF No. 68.)  On

4    September 6, 2012, the Court held an oral hearing on this matter.

5

6        **B.      Factual Background**

7

8        The Truck and Bus Regulation was adopted by the California Legislature in 2008,

9    and then amended in 2011, with the goal of reducing amounts of diesel particulate

10   matter ("PM") and oxides of nitrogen ("NOx") emissions from diesel-fueled trucks and

11   buses operating within the state.[3]  (Declaration of Melissa Lin Perrella in Support of

12   NRDC's Cross-Motion for Summary Judgment ("Perrella Decl."), ECF No. 45-2, Ex. E.)

13   The Regulation was adopted as part of California's plan to satisfy national air quality

14   standards set by the federal Clean Air Act ("CAA"), 42 U.S.C. § 7401 et seq.

15       Over eighty-percent of California's nearly one million heavy-duty trucks are fueled

16   by diesel, and those diesel-fueled vehicles are the largest source of PM and NOx

17   emissions in California.  (Declaration of Todd Sax in Support of ARB's Opposition to

18   Motion for Summary Judgment ("Sax Decl."), ECF No. 38-6, ¶ 13.).  According to ARB,

19   those emissions contribute to ambient levels of PM composed of particles 2.5 microns or

20   less in diameter, which causes a variety of health problems, up to and including death.

21   (Id.; Declaration of Linda Smith in Support of ARB's Opposition to Motion for Summary

22   Judgment ("Smith Decl."), ECF No. 38-2, ¶ 9.)  NOx is also a "precursor to ozone,"

23   exposure to which carries its own health risks.  (Declaration of Tony Brazil in Support of

24   ARB's Opposition to Motion for Summary Judgment ("Brazil Decl."), ECF No. 38-7,

25   ¶ 11.)

26   ///

27   ───────────────────────

28       [3] Many of these relatively undisputed facts are repeated in multiple filings.  Where appropriate for convenience, however, the Court limits its citations to one source.

1       The Regulation combats PM and NOx emissions in two ways.  First, covered

2   vehicles are required to have diesel particulate filters installed to reduce PM emissions.

3   (Brazil Decl. ¶ 22.)  Accordingly, by the applicable regulatory deadlines, older trucks will

4   need to either be retrofitted with filters or have their engines replaced with model year

5   2007 or newer engines, engines that are already equipped with updated filtering

6   technology.  (Id.)  In addition, all engines will have to be upgraded to model year 2010

7   engines (or engines with equal or lower emissions) by separate regulatory deadlines.

8   (Id.)  The NRDC provided a chart helpful in illustrating the compliance schedule:

9

| Engine Model Year Schedule | |
|---|---|
| Engine Year | Requirement from January 1, 2012 |
| Pre-1994 | No requirements until 2015, then 2010 engine |
| 1994-95 | No requirements until 2016, then 2010 engine |
| 1996-99 | PM filter from 2012 to 2020, then 2010 engine |
| 2000-04 | PM filter from 2013-2021, then 2010 engine |
| 2005-06 | PM filter from 2014 to 2022, then 2010 engine |
| 2007-09 | No requirements until 2023, then 2010 engine |
| 2010 | Meets final requirement |

20   (NRDC's Cross-Motion for Summary Judgment, ECF No. 45-1, at 4.)

21       Accordingly, most heavy-duty trucks must have filters installed by 2014.  (Brazil

22   Decl. ¶ 23.)  Similarly, all heavy-duty truck engines must be replaced with model year

23   2010 engines by 2023.  (Id. ¶ 24.)  However, trucks with 1996 to 1999 model year

24   engines and 2000 to 2004 model year engines must install the requisite filters by

25   January 1, 2012, and January 1, 2013, respectively.  (Id. ¶ 25)  Compliance with the

26   Regulation even as to these trucks can nonetheless be delayed under certain provisions

27   of the Rule.  (Id. ¶¶ 26-32.)

28   ///

1   It is estimated that the Regulation will cost $1.5 billion over the first five years of its

2   implementation and $2.2 billion over the Regulation's life.  (Brazil Decl. ¶ 18.)

3           CDTOA is a trade association representing nearly 1,000 trucking companies

4   "whose business constitutes over seventy five percent (75%) of the hauling of dirt, rock,

5   sand, and gravel operations in California."  (Pl.'s Motion for Summary Judgment ("Pl.'s

6   Mot."), ECF No. 34, at 1.)  CDTOA contends that "[v]irtually all of the trucks owned and

7   operated by CDTOA members are subject to the [Regulation]," and that the Regulation

8   imposes steep fines and penalties on anyone who operates their trucks in violation of the

9   [R]egulation."  (Declaration of Lee Brown in Support of Motion for Summary Judgment

10  ("Brown Decl."), ECF No. 34-3, ¶¶ 4-5.)  According to the CDTOA, however, retrofitting

11  the covered trucks is prohibitively expensive for many of its members and makes the

12  vehicles less efficient, more prone to breakdowns, and harder to resell.  (Brown Decl.

13  ¶ 8; Declaration of Fred Recupido in Support of Motion for Summary Judgment

14  ("Recupido Decl."), ECF No. 34-2, ¶¶ 5-7; Declaration of Jay Pocock in Support of

15  Motion for Summary Judgment ("Pocock Decl."), ECF No. 34-4, ¶¶ 5-6.)  CDTOA thus

16  contends that, if the Regulation is enforced, its members will suffer irreparable harm,

17  "including the loss of the businesses they have worked for years to build."  (Pl.'s Mot. at

18  20.)

19          Indeed, according to the CDTOA, its members' primary source of livelihood is

20  their diesel-powered trucks.  (Pl.'s Mot. at 2; Brown Decl. ¶ 7.)  Members anticipate

21  utilizing their trucks for decades, and they purchase those trucks via conditional sales

22  contracts typically extending five or six years.  (Id.)  The diesel trucks at issue here

23  typically cost at least $130,000, and can easily cost over $210,000.  (Id.)  Finance

24  charges run around fifteen to twenty percent. (15-20%) (Id.)

25          The available technology necessary to retrofit CDTOA members' trucks in

26  compliance with the Regulation costs at least $18,000 per truck.  (Id.; Brown Decl. ¶ 8.)

27  ///

28  ///

6

1   CDTOA contends that its members cannot afford to pay these types of compliance

2   costs, and that, especially in light of the other economic factors currently affecting the

3   construction industry, if forced to either comply or cease operations, those members will

4   likely lose their businesses.  (Pl.'s Mot. at 2-3.)  According to CDTOA, its members will

5   have to raise prices or reduce services in order to ensure compliance with the

6   Regulation to counter the increase in costs.  (Id. at 7; Brown Decl. ¶ 12.)

7           Given the impending deadlines imposed by the Truck and Bus Regulation and the

8   grave consequences CDTOA alleges will befall its members if the Regulation is

9   enforced, CDTOA initiated this action alleging that the Regulation is preempted by the

10  Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C.

11  § 14501(c)(1), pursuant to the Supremacy Clause of Article VI of the United States

12  Constitution.  (ECF No. 12, at 4-5.)  CDTOA now seeks summary judgment based on

13  this preemption argument.  (ECF No. 34.)  ARB opposes Plaintiff's Motion and argues

14  summary judgment in its favor is instead proper because California's Rule falls within the

15  safety exception to the preemption provision.  (ECF No. 43.)  The NRDC likewise

16  opposes Plaintiff's Motion and moves for summary judgment in Defendants' favor

17  arguing that Plaintiff's preemption argument fails because that argument can only

18  succeed if, in enacting the FAAAA, Congress intended to effectuate an implied repeal of

19  certain provisions of the CAA, which conclusion is itself unsupported by the evidence.

20  (ECF Nos. 44, 45.)

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

7

### C.  Statutory Background

#### 1.  Supremacy Clause of the United States Constitution

The Supremacy Clause of the United States Constitution mandates that "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const., art. VI, cl. 2.  The Supremacy Clause "invalidates state laws that interfere with, or are contrary to, federal law."  In re Cybernetic Servs., Inc., 252 F.3d 1039, 1045 (9th Cir. 2001) (internal citations omitted). Whether federal law preempts state law is governed by congressional intent.  Fireman's Fund Ins. Co. v. City of Lodi, Cal., 302 F.3d 928, 941 (9th Cir. 2002).  The Supreme Court has established a general framework by which preemption questions are analyzed:

> [S]tate law can be preempted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is preempted.  If Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.

Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248 (1984) (internal citations omitted).

#### 2.  Federal Aviation Administration Authorization Act (FAAAA)

"On January 1, 1995, Section 601 of the [FAAAA] became federal law.  As a general matter, this section preempts a wide range of state regulation of intrastate motor carriage."  Californians for Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1187 (9th Cir. 1998).  As relevant to CDTOA's preemption claim, the FAAAA provides:

8

> [A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law <u>related to a price, route, or service of any motor carrier</u> . . . with respect to the transportation of property.

49 U.S.C. § 14501(c)(1) (emphasis added).  Congress enacted this preemption provision because it "believed that across-the-board deregulation was in the public interest as well as necessary to eliminate non-uniform state regulations of motor carriers which had caused 'significant inefficiencies, increased costs, reduction of competition, inhibition of innovation and technology, and curtail[ed] the expansion of markets.'" <u>Mendonca</u>, 152 F.3d at 1187 (quoting H.R. Rep. No. 103-677, at 86-88 (1994) (Conf. Rep.)).  In addition, "by enacting a preemption provision identical to an existing provision deregulating air carriers (the Airline Deregulation Act ('ADA')), Congress sought to 'even the playing field' between air carriers and motor carriers." <u>Id.</u>[4]

The Supreme Court in <u>Rowe v. New Hampshire Motor Transport Ass'n</u>, 552 U.S. 364 (2008), subsequently considered the reach of the FAAAA's preemption clause. According to <u>Rowe</u>,

> (1) . . .[s]tate enforcement actions having a connection with, or reference to carrier rates, routes, or services are pre-empted; (2) . . . such pre-emption may occur even if a state law's effect on rates, routes or services is only indirect; (3) . . . in respect to preemption, it makes no difference whether a state law is 'consistent' or 'inconsistent' with federal regulation; and (4) . . . preemption occurs at least where state laws have a 'significant impact' related to Congress' deregulatory and preemption-related objectives.

552 U.S. at 370 (internal citations and quotations omitted) (emphasis omitted).

///

///

///

---

[4] The imbalance alluded to here "arose out of [the Ninth Circuit's] decision in <u>Federal Express Corp. v. Cal. Pub. Utils. Comm'n</u>, 936 F.2d 1075 (9th Cir. 1991).  "By holding that Federal Express fit within the ADA's definition of 'air carrier,' [that] court concluded that California's intrastate economic regulations of the carrier's shipping activities were preempted.  As a result, air-based shippers gained a sizeable advantage over their more regulated, ground-based shipping competitors.  By preempting the states' authority to regulate motor carriers, Congress sought to balance the regulatory 'inequity' produced by the ADA's preemption of the states' authority to regulate air carriers." <u>Mendonca</u>, 152 F.3d at 1187.

1   The Rowe Court recognized "Congress' overarching goal as helping assure

2   transportation rates, routes, and services that reflect 'maximum reliance on competitive

3   market forces,' thereby stimulating 'efficiency, innovation, and low prices,' as well as

4   'variety' and 'quality.'"  Id. (internal citations omitted).  That Court nonetheless observed

5   that "federal law might not pre-empt state laws that affect fares in only a 'tenuous,

6   remote, or peripheral . . . manner.'"  Id. (internal citations omitted).

7

8                              **3.  Clean Air Act ("CAA")**

9

10          Under the CAA, the EPA has the authority to issue national air quality standards

11   establishing the maximum allowable concentration of a given pollutant.  42 U.S.C.

12   § 7409(a).  "To implement these standards, the Act establishes a system of State

13   Implementation Plans ('SIPs'), whereby states submit, subject to the [EPA] review and

14   approval, proposed methods for maintaining air quality."  Safe Air for Everyone v. U.S.

15   E.P.A., 488 F.3d 1088, 1091 (9th Cir. 2007).  Pursuant to 42 U.S.C. § 7407(a),

16                    Each State shall have the primary responsibility for assuring
                      air quality within the entire geographic area comprising such
17                    State by submitting an implementation plan for such State
                      which will specify the manner in which national primary and
18                    secondary ambient air quality standards will be achieved and
                      maintained within each air quality control region in such
19                    State.

20          The CAA also requires states to provide "necessary assurances" that "the State

21   . . . will have adequate personnel, funding, and authority under State (and, as

22   appropriate, local) law to carry out such implementation plan (and is not prohibited by

23   any provision of Federal or State law from carrying out such implementation plan or

24   portion thereof)."  42 U.S.C. § 7410(a)(2)(E).  "[I]f an emission standard or limitation is in

25   effect under an applicable implementation plan . . . such State or political subdivision

26   may not adopt or enforce any emission standard or limitation which is less stringent than

27   the standard or limitation under such plan or section."  42 U.S.C. § 7416.

28   ///

1    Upon approval by the EPA, a SIP is printed in the Federal Register and becomes

2    enforceable as federal law.  See Safe Air for Everyone, 488 F.3d at 1091 (Once

3    approved by EPA, SIPs "have the force and effect of federal law.").

4

5                                    **ANALYSIS**

6

7          This case presents unique questions regarding the interplay of state and federal

8    laws of air pollution control and the channels of judicial review available under the CAA.

9    Before reaching the merits of the parties' cross-motions for summary judgment, the

10   Court must determine, first, whether the CAA mandates dismissal for lack of subject-

11   matter jurisdiction of Plaintiff's supremacy clause challenge to the Truck and Bus

12   Regulation in light of EPA's final action approving the Regulation as part of California's

13   SIP and second, if it does not, whether this case can proceed in EPA's absence.

14

15         **A. The Court does not have subject-matter jurisdiction over this action in
16             light of EPA's approval of California's SIP**

17         Subject-matter jurisdiction concerns "the courts' statutory or constitutional power

18   to adjudicate the case." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89

19   (1998) (emphasis in the original).  "Jurisdiction is at issue in all stages of a case." Moe v.

20   U.S., 326 F.3d 1065, 1070 (9th Cir. 2003).  Pursuant to Federal Rule of Civil Procedure

21   12(h)(3), "if the court determines at any time that it lacks subject-matter jurisdiction, the

22   court must dismiss the action."

23         The CAA creates an "unusual, bifurcated jurisdictional scheme" that divides

24   jurisdiction between the federal district courts and the courts of appeal. Sierra Club v.

25   Thomas, 828 F.2d 783, 794 (D.C. Cir. 1987).

26   ///

27   ///

28   ///

1    Pursuant to the CAA judicial review provision, "[a] petition for review of the

2    Administrator's action in approving or promulgating any [state] implementation plan . . .

3    or any other final action of the Administrator under this chapter . . . may be filed <u>only</u> in

4    the United States Court of Appeals for the appropriate circuit."  42 U.S.C. § 7607(b)(1)

5    (emphasis added).  Thus, "judicial review of final actions by the EPA Administrator

6    [including SIP approvals] rests exclusively in the appellate courts."  <u>Envtl. Defense v.</u>

7    <u>Leavitt</u>, 329 F. Supp. 2d 55, 63 (D.D.C. 2004); <u>see also</u> <u>Envtl. Defense Fund v. Thomas</u>,

8    870 F.2d 892, 896 (2d Cir. 1989) ("Section 307 embodies a grant of exclusive jurisdiction

9    [to courts of appeals].") [5].

10          Defendants argue that, once EPA approved the Truck and Bus Regulation as part

11   of California's SIP, the court of appeals has exclusive jurisdiction to review Plaintiff's

12   claim challenging the Regulation.  (NRDC's Suppl. Brief, ECF No. 63, at 9-10.)  CDTOA

13   counters that the EPA action is of no consequence to the instant litigation because

14   Plaintiff's single claim is limited to challenging the state Regulation, and not the SIP or

15   the EPA action of approving the SIP.  (Pl.'s Suppl. Brief, ECF No. 64, at 1, 11.)  Plaintiff

16   contends that its relief lies in this Court, and not in the court of appeals, because

17   Plaintiff's preemption challenge to the state Regulation does not implicate any "final

18   action" by EPA.  (Pl.'s Sur-Reply Brief, ECF No. 67, at 3.)  While Plaintiff is technically

19   correct that its single preemption claim does not directly challenge any "final action" by

20   the EPA, Plaintiff ignores the complex interrelationship between the federal and state

21   laws designed to control air pollution.

22          The interplay between the state Truck and Bus Regulation and the EPA-approved

23   SIP incorporating the Regulation is best understood within the CAA's regulatory

24   framework, which the Ninth Circuit had described as follows:

25   ///

26   ///

27   ///

28   ───────────────
     [5] The citation to Section 307 refers to the CAA itself; it is codified at 42 U.S.C. § 7607.

> The [CAA] requires the U.S. Environmental Protection Agency (EPA) to promulgate health-based standards for certain pollutants . . . . These standards are called the National Ambient Air Quality Standards (NAAQS). 42 U.S.C. § 7409(a), (b).  Each state is required under the CAA to adopt a [SIP] to satisfy the NAAQS requirements. 42 U.S.C. § 7410(a)(1).  Specifically, each state is mandated under § 110(a) of the Act, 42 U.S.C. § 7410(a), to adopt a "plan which provides for implementation, maintenance, and enforcement" of the ambient air quality standards . . . . Each SIP must include <u>enforceable</u> emission limitations and other control measures necessary to attain the NAAQS, as well as timetables for compliance.  42 U.S.C. § 7410(a)(2)(A).

<u>Bayview Hunters Point Cmty. Advocates v. Metro Transp. Comm'n</u> ("<u>Bayview Hunters</u>"), 366 F.3d 692, 695 (9th Cir. 2004) (emphasis added).  A state submitting a SIP for the EPA approval must provide "necessary assurances" that it has the necessary legal authority and adequate resources to implement the SIP.  42 U.S.C. § 7410(a)(2)(E).

Thus, the CAA-established system of national air quality standards is "heavily dependent upon state participation."  <u>Safe Air for Everyone</u>, 488 F.3d at 1092.  "The Act places much of its enforcement burden on the states, which are required to submit SIPs that show how states will attain the standards for major air pollutants."  <u>El Comite Para El Bienestar de Earlimart v. Warmerdam</u>, 539 F.3d 1062, 1066 (9th Cir. 2008).  Accordingly, the success of federal regulatory programs implemented by the EPA pursuant to the CAA directly depends on enforceability of the underlying state emission control measures incorporated into the state implementation plans.

///

///

///

///

///

///

///

///

///

13

1         Moreover, a SIP becomes "federal law, not state law, once EPA approve[s] it."[6]

2    Safe Air for Everyone, 488 F.3d at 1197.  As such, a SIP "becomes controlling and must

3    be carried out by the state."  Bayview Hunters, 366 F.3d at 695 (citation omitted).  CAA

4    severely limits states' authority to terminate or modify state programs incorporated into

5    an EPA-approved SIP.  In particular, "if an emission standard or limitation is in effect

6    under an applicable implementation plan . . . such State or political subdivision may not

7    adopt or enforce any emission standard or limitation which is less stringent than the

8    standard or limitation under such plan or section."  42 U.S.C. § 7416.  Furthermore, the

9    CAA requires any SIP revisions by a state to be approved by the EPA before such

10   revisions are effective.  Id.; 42 U.S.C. § 7410(l).  Thus, once the EPA approves a SIP, "a

11   state may not unilaterally alter the legal commitments of [the plan]."

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ───────────────────

21       [6] Plaintiff initially argued that the SIP does not become "federal law" upon its approval by the EPA, but merely becomes enforceable by the EPA in federal courts.  (Pl.'s Suppl. Brief, at 4-5.)  Plaintiff urged the Court to track the language describing a SIP as having the "force and effect of federal law" to its roots, which, according to Plaintiff, can be found in the Eighth Circuit's decision in Union Electric Co. v. EPA,

22   515 F.2d 206, 211 n.16 (8th Cir. 1975).  (Pl.'s Suppl. Brief, at 5.)  Plaintiff contended that the quoted language, which had subsequently been repeated in and adopted by numerous federal courts, is merely

23   "shorthand for the proposition that the EPA has enforcement powers in federal court."  (Id.)  Contrary to Plaintiff's contention, the overwhelming weight of authority demonstrates that a SIP becomes federal

24   law upon its approval by EPA.  See e.g., El Comite Para El Bienestar de Earlimart, 539 F.3d at 1066 ("Once the EPA approves a SIP, it becomes federal law."); Mirant Potomac River, LLC v. U.S. E.P.A., 577 F.3d

25   223, 227 (4th Cir. 2009) ("Upon approval by EPA, the SIP becomes a binding federal regulation."); Communities for a Better Env't v. Cenco Refining Co., 180 F. Supp. 2d 1062, 1068 (C.D. Cal. 2001)

26   ("Once approved by the EPA, the requirements and commitments of a SIP become binding as a matter of federal law upon the state.").  In its subsequent supplemental briefing, Plaintiff appeared to have

27   abandoned its initial argument and proceeded to argue that the "federalized" nature of the SIP is of no consequence to this litigation because Plaintiff is not challenging the SIP or EPA's action of approving the

28   SIP, but only the state Truck and Bus Regulation itself.  (Pl.'s Sur-Reply Brief, at 1-2.)

1   Safe Air for Everyone, 488 F.3d at 1197; see also U.S. v. Ford Motor Co., 814 F.2d

2   1099, 1103 (6th Cir. 1987) (explaining that EPA-approved SIP remains enforceable

3   federal law despite a state court decision invalidating a state regulation incorporated into

4   the SIP); Paisley v. Darwin, 2011 WL 3875992, at *4-5 (D. Ariz. Sept. 2, 2011)

5   (concluding that Arizona's Legislature lacked legal authority to repeal a state regulation

6   incorporated into Arizona's EPA-approved SIP absent prior approval from EPA); Coal.

7   For Clean Air, Inc. v. S. Coast Air Quality Mgmt. Dist., 1999 WL 33842864, at *1 (C.D.

8   Cal. Aug. 27, 1999) ("[O]nce the EPA approves a SIP, the state is required to comply

9   with it unless and until a replacement SIP is formally approved.").

10          Furthermore, a violation of a state regulation incorporated into an EPA-approved

11  SIP constitutes not only a state-law violation, but also a violation of federal law.  See

12  Concerned Citizens of Bridesburg v. Philadelphia Water Dept., 843 F.2d 679, 680-81

13  (3d Cir. 1988) (concluding that the plaintiff's complaint, alleging a violation of city and

14  state odor regulations that were part of the EPA-approved SIP, is "a cognizable federal

15  claim under the Pennsylvania SIP"); Sweat v. Hull, 200 F. Supp. 2d 1162, 1171 (D. Ariz.

16  2001) (concluding that the repeal by the state legislature of the state program

17  incorporated into the EPA-approved SIP constituted a violation of federal law"); Ass'n of

18  Irritated Residents v. C&R Vanderham Dairy, 2006 WL 2644896, at *8 (E.D. Cal.

19  Sept. 14, 2006) ("As part of California's EPA approved SIP, District Rules 2010 and 2201

20  'are enforceable by either the State, EPA, or via citizen suits brought under 42 U.S.C.

21  § 7604(a)."); Sierra Club v. Administrator, U.S. E.P.A., 496 F.3d 1182, 1186 (11th Cir.

22  2007) ("[T]he Georgia Rule [which] is part of a [SIP] made pursuant to the CAA, . . . ha[s]

23  the force and effect of federal law and may be enforced by the [EPA] in federal courts.").

24  Therefore, CDTOA's attempt to present California's Truck and Bus Regulation as a rule

25  of law totally distinct and separate from California's SIP incorporating the Regulation is

26  not supported by either statutory authority or judicial precedents.

27  ///

28  ///

1    As mentioned above, one of the important safeguards of the federal regulatory

2    program provided by the CAA is the Act's judicial review provision pursuant to which

3    federal courts of appeals have exclusive jurisdiction over any petitions challenging EPA's

4    final action of approving a SIP.  See 42 U.S.C. § 7607(b)(1).  "Generally, when

5    jurisdiction to review administrative determinations is vested in the courts of appeals[,]

6    these specific, exclusive jurisdiction provisions preempt district court jurisdiction over

7    related issues under other statutes."  Palumbo v. Waste Techs. Indus., 989 F.2d 156,

8    160-61 (4th Cir. 1993) (quoting Connors v. Amax Coal Co., 858 F.2d 1226, 1231

9    (7th Cir. 1988)) (emphasis added).  As the Fourth Circuit has noted, in the context of the

10   Resource Conservation and Recovery Act:

11          when Congress has chosen to provide the circuit courts with
            exclusive jurisdiction over appeals from decisions, the district
12          courts are without jurisdiction over the legal issues pertaining
            to those decisions - whether or not those issues arise from
13          the statute that authorized the agency action in the first place.

14   Id. (emphasis added).

15   Federal courts which considered the scope of § 307(b) of the CAA have

16   interpreted it broadly, as governing not only direct challenges to EPA's final actions but

17   also as applying to any other challenges that have the practical effect of upsetting EPA's

18   final action or that are closely related to such final action.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

16

1  See, e.g., Missouri v. United States, 109 F.3d 440, 441 (8th Cir. 1997) (concluding that

2  the court of appeals had exclusive jurisdiction over a claim that "could not be completely

3  separated" from the plaintiff's challenge to the EPA Administrator's final action); Virginia

4  v. United States, 74 F.3d 517, 523 (4th Cir. 1996) (holding that the district court did not

5  have subject-matter jurisdiction over Virginia's constitutional challenge to certain CAA

6  provisions where "the practical objective of the complaint [was] to nullify final actions of

7  [the] EPA"); New England Legal Found. v. Costle, 666 F.2d 30, 33 (2d Cir. 1981)

8  (holding that a federal common law nuisance claim against lighting company filed in the

9  district court was properly dismissed where EPA approved a variance permitted the

10  challenged conduct because "[a]ll claims" against the validity of the variance "must be

11  addressed to the court of appeals"); Virginia v. United States, 926 F. Supp. 537, 544

12  (E.D. Va. 1995) (interpreting 42 U.S.C. § 7607(b) broadly to include a "class of claims

13  that 'necessarily implicate' an EPA final action").

14      The Eighth Circuit's decision in Missouri v. United States is instructive.  109 F.3d

15  440, 441 (8th Cir. 1997).  In that case, the State of Missouri challenged the CAA's

16  statutory scheme after the EPA imposed sanctions on it for noncompliance with the

17  CAA.  Id. at 441.  Additionally, Missouri challenged certain actions of the EPA

18  Administrator under the CAA.  Id.  The district court ruled that, although Plaintiff had to

19  bring its challenge to the Administrator's final action in the court of appeal, section 307 of

20  the CAA did not divest the district court of subject-matter jurisdiction over Plaintiff's

21  constitutional claims.  Id.  The Eighth Circuit reversed and held that the district court was

22  without jurisdiction to hear the entire case because Missouri's constitutional claims

23  "could not be completely separated" from its challenges to the Administrator's final

24  action.  Id. at 442.

25      In Virginia v. United States, the Fourth Circuit similarly held that the CAA

26  precluded the district court from exercising jurisdiction over a complaint filed by Virginia

27  that challenged various provisions of the CAA as unconstitutional under the Tenth

28  Amendment and the Spending Clause of the U.S. Constitution.

17

1   74 F.3d 517, 522 (4th Cir. 1996).  The Fourth Circuit rejected Virginia's attempt to frame

2   its complaint as challenging solely the constitutionality of the CAA and explained:

3   "[A]lthough [Virginia] seeks a ruling that certain parts of the [CAA] are unconstitutional,

4   the practical objective of the complaint is to nullify final actions of [the] EPA."  Id. at 523

5   (emphasis added).  Accordingly, the court held that Virginia "was confined to [the]

6   avenue of review" provided by 42 U.S.C. § 7607(b) and had to bring its constitutional

7   challenges to the CAA directly in a federal court of appeals.  Id.

8       A decision of the district court for the Eastern District of Pennsylvania in

9   Benning v. Browner is even more on point.  1998 WL 717436 (E.D. Pa. Sept. 24, 1998).

10  In that case, the plaintiffs, in addition to seeking a ruling that certain provisions of the

11  CAA were unconstitutional under the Tenth Amendment, also challenged the state

12  vehicle inspection and maintenance program ("I/M Program") incorporated into

13  Pennsylvania's EPA-approved SIP, as violative of the Equal Protection Clause of the

14  U.S. Constitution.  Id. at *1, 3.  The court concluded that it did not have subject-matter

15  jurisdiction to hear Plaintiff's challenge to Pennsylvania's I/M Program because the

16  plaintiffs were "essentially challenging the appropriateness of the EPA's Administrator's

17  action in approving a regulation they believe to be unconstitutional" as part of

18  Pennsylvania's SIP.  Id. at *3.  Accordingly, the district court held, the court of appeals

19  had exclusive jurisdiction over both of Plaintiff's claims because "the plaintiff's practical

20  objective [was] to nullify the EPA's final action approving Pennsylvania's SIP and [the

21  state] I/M program."  Id. at *2.

22      The Court recognizes that the instant action is distinguishable from the above-

23  discussed cases in that it does not appear that Plaintiff had any secret intent of

24  challenging the EPA final action when it filed its lawsuit on February 11, 2011, more than

25  a year prior to the EPA's approval of the Truck and Bus Regulation as part of California's

26  SIP.  Even now, after the EPA approved the Regulation as part of California's SIP,

27  CDTOA insists that it has no intention to challenge either the SIP or any of the EPA

28  actions regarding the SIP in the instant litigation.

18

1   (See, e.g., Pl.'s Suppl. Brief, at 1; Pl.'s Sur-Reply Brief, at 3.)  However, in light of the

2   fact that the SIP's enforceability directly depends on the validity of the underlying state

3   programs of air pollution control, CDTOA's challenge to the Regulation contains an

4   implicit attack on the validity of California's SIP.

5          Pursuant to 42 U.S.C. § 7410(a)(2), a SIP must include "enforceable" emission

6   limitations and other control measures that a state has authority to implement.  In the

7   absence of such enforceable state programs, a SIP will become a nullity devoid of any

8   legally significant content. [7]  Accordingly, Plaintiff's instant Supremacy Clause challenge

9   "pertains" to EPA's final action approving the challenged Regulation as part of

10  California's SIP, see Palumbo, 989 F.2d at 161, "could not be completely separated"

11  from the EPA's final action, see Missouri v. United States, 109 F.3d at 442, and has the

12  "practical objective" of nullifying the EPA decision, see Virginia v. United States, 74 F.3d

13  at 523.  As such, Plaintiff's preemption challenge to the state Regulation necessarily

14  affects the viability and enforceability of the SIP itself.  See New England Legal

15  Foundation, 666 F.2d at 33 (concluding that plaintiff's "attack on . . . conduct which had

16  been approved by the EPA . . . 'is, in effect, an attack upon the validity of the EPA-

17  approved variance'").  Because CAA section 307(b) "channels review of final EPA action

18  exclusively to the courts of appeals, regardless of how the grounds for review are

19  framed," see Virginia v. United States, 74 F.3d at 523, it appears that the Court can no

20  longer exercise jurisdiction over this action in light of EPA's approval of the Truck and

21  Bus Regulation as part of California's SIP.

22  ///

23  ///

24

25          [7] Plaintiff's argument that the Truck and Bus Regulation and the SIP incorporating the Regulation
are "entirely different law[s] promulgated by . . . entirely different administrative bod[ies]" is further defeated

26  by the language of the Code of Federal Regulations, codifying the Truck and Bus Regulation as part of
California's SIP.  See 40 CFR § 52.220(c)(410) (stating that the Truck and Bus Regulation, 13 CCR.

27  § 2025, is "incorporate[ed] by reference" into California's SIP) (emphasis added).  Thus, contrary to
Plaintiff's contention, the SIP does not create a separate federal regulation identical to the state regulation

28  at issue, but incorporates "by reference" California's Truck and Bus Regulation.  Therefore, invalidation of
the Truck and Bus Regulation would amount to an implicit repeal of a portion of the SIP.

1     Moreover, before approving the Truck and Bus Regulation as part of California's

2     SIP, EPA concluded: "[W]e know of no obstacle under Federal or State law in CARB's

3     ability to implement the regulation."  76 Fed. Reg. at 40658.  Accordingly, in arguing that

4     its instant challenge does not implicate EPA's final action, Plaintiff overlooks the fact that

5     its preemption claim implicitly challenges the correctness of EPA's determination that

6     California has authority to adopt the regulation under federal law.  Thus, Plaintiff's

7     challenge should be brought in the court of appeals.  See El Comite Para El Bienestar

8     de Earlimart, 539 F.3d at 1073 ("Nor would the district court have jurisdiction to hold, in

9     effect, that the EPA improperly approved an invalid SIP because it lacked enforceable

10    emission standards.  That challenge, and any related relief, falls outside the purview of

11    the district court and would have to be brought as a petition to review the EPA's

12    rulemaking process.").

13    Another relevant consideration in determining whether CDTOA can proceed with

14    its preemption challenge in this Court is whether retaining jurisdiction by the Court would

15    create "the risk of duplicative or piecemeal litigation, and the risk of contradictory

16    decisions."  See Natural Resources Defense Council v. Reilly, 788 F. Supp. 268, 273

17    (E.D. Va. 1992).  "The policy behind having a special review procedure in the first place

18    . . . disfavors bifurcating jurisdiction over various substantive grounds between district

19    court and the courts of appeals."  City of Rochester v. Bond, 603 F.2d 927, 936 (D.C.

20    Cir. 1979).  The Supreme Court has held that the courts should avoid bifurcation of

21    administrative review "[i]n the absence of specific evidence of contrary congressional

22    intent."  Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985).

23    Maintaining the instant action in this Court creates a realistic risk of piecemeal

24    review on the same issue.  Although Plaintiff here has chosen not to challenge

25    California's SIP or EPA's final decision approving the SIP revisions at this time, it

26    acknowledges that it is "possible that plaintiff may challenge the approval of the SIP . . .

27    in a different forum . . . on similar or different grounds."  (Pl.'s Rule 19 Suppl. Brief, at 4)

28    (emphasis added).

20

1   Accordingly, the policy of preventing piecemeal or bifurcated litigation over the same

2   issue warrants channeling Plaintiff's instant challenge to the court of appeals.

3           Finally, the Supreme Court's recent decision in Douglas v. Independent Living

4   Center of Southern California, 132 S. Ct. 1204 (2012), provides additional support for the

5   Court's conclusion that it cannot retain jurisdiction over Plaintiff's preemption challenge

6   in light of EPA's approval of the Truck and Bus Regulation as part of California's SIP.  In

7   Douglas, a number of Medicaid providers and recipients challenged California's

8   amendments to its state Medicaid plan on the basis that those amendments were

9   preempted by federal Medicaid law.  132 S. Ct. at 1207.  Medicaid is a "cooperative

10  federal-state program that provides medical care to needy individuals."  Id. at 1208.  It

11  requires states to submit a state Medicaid plan, as well as any amendments to the plan,

12  to a federal agency – the Centers for Medicare and Medicaid Services ("CMS") – which

13  reviews the state plans to ensure their compliance with federal Medicaid law.  Id.  In

14  Douglas, CMS approved California's amendments to its Medicaid plan before the

15  Supreme Court issued a ruling on the plaintiffs' preemption claim.  Id. at 1209.  Based on

16  CMS's approval, the majority stated that the case was "now in a different posture," and

17  remanded the case to the Ninth Circuit to determine the impact the federal approval had

18  on the viability of the plaintiffs' preemption claim.  Id. at 1210.[8]  The Court stated that the

19  plaintiffs may need "to proceed by seeking review of the agency determination under the

20  Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq., rather than in an action

21  against California under the Supremacy Clause."  Id.

22          Importantly for the purposes of the instant litigation, the Douglas Court raised

23  concerns about potentially conflicting and redundant decisions that could occur if the

24  plaintiffs were permitted to proceed with their preemption claim against the State when

25  they could seek a remedy under the APA against the CMS.  Id. at 1210-11.  The

26  Supreme Court stated:

27

28          [8] The Ninth Circuit has not issued its decision on remand yet.

21

1
2
3
4
5
6
7
8
9

> Nor have the parties suggested reasons why, once the agency has taken final action, a court should reach a different result in a case like this one, depending upon whether the case proceeds in a Supremacy Clause action rather than under the APA for review of an agency decision.  Indeed, to permit a difference in result here would subject the States to conflicting interpretations of federal law by several different courts (and the agency), thereby threatening to defeat the uniformity that Congress intended by centralizing administration of the federal program in the agency and to make superfluous or to undermine traditional APA review. . . .  If the two kinds of actions should reach the same result, the Supremacy Clause challenge is at best redundant.  And to permit the continuation of the action in that form would seem to be inefficient, for the agency is not a participant in the pending litigation below, litigation that will decide whether the agency-approved state rates violate the federal statute.

10  Id. (internal citations omitted).  As this Court explained above, the same concerns about

11  the risk of duplicative and inconsistent judicial determinations arise in the instant

12  litigation.

13      The CAA, like Medicaid statutes, creates a "cooperative federal-state program."

14  See Vigil v. Leavitt, 381 F.3d 826, 830 (9th Cir. 2004) ("The [CAA] sets forth a

15  cooperative state-federal scheme for improving the nation's air quality").  When EPA

16  approved the Truck and Bus Regulation as part of California's SIP, it determined, like

17  CMS in Douglas, that the Regulation was not prohibited by any provision of Federal or

18  State law.  See 76 Fed. Reg. at 40658 ([W]e know of no obstacle under Federal or State

19  law in CARB's ability to implement the regulations.").  While APA provided a specific

20  judicial review procedure for the plaintiffs in Douglas, the CAA provides a specific forum

21  for resolution of CDTOA's claim in the present matter and channels all actions

22  challenging EPA's SIP approvals to the courts of appeals.  See 42 U.S.C. § 7606(b)(1).

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1   Thus, <u>Douglas</u> supports the Court's determination that, after EPA's approval of the Truck

2   and Bus Regulation as part of California's SIP, Plaintiff cannot proceed with its

3   preemption claim in this Court.[9]   Even though the Court had subject-matter jurisdiction

4   over Plaintiff's preemption claim prior to EPA's approval of California's SIP revisions, it

5   can no longer retain jurisdiction in light of EPA's final action.  <u>See</u> <u>City of Seabrook v.</u>

6   <u>Costle</u>, 659 F.2d 1371, 1373 (5th Cir. 1981) ("Even if . . . the district court had jurisdiction

7   of plaintiff's claim [when the lawsuit was filed], the publication of the 'final rule' clearly left

8   the district court without jurisdiction of the claim. . . .  [O]nce the Administrator had

9   issued his 'final rule' on the Texas [SIP] revisions, plaintiffs could seek review . . . only in

10  the court of appeals.").

11  ///

12  ///

13      [9] Defendants, relying on <u>Douglas</u>, also argue that Plaintiff can no longer maintain its preemption

14  claim because only state law can be subject to preemption, and the challenged Truck and Bus Regulation
    is now federal law.  (<u>See</u> NRDC's Suppl. Brief, at 3-6; ARB's Suppl. Brief, at 2.)  Defendants contend that
    the Court must harmonize the federalized Truck and Bus Regulation and the CAA and try to "give effect to

15  both laws if possible."  (<u>See</u> NRCD's Suppl. Brief, at 6-7; ARB's Suppl. Brief, at 2-3, both citing <u>Ass'n of</u>
    <u>Am. RRs. v. S. Coast Air Quality Mgmt. Dist.</u>, 622 F.3d 1094, 1097 (9th Cir. 2010)).  The Court agrees

16  that, in light of the Supreme Court's hesitation to consider the merits of the <u>Douglas</u> plaintiffs' Supremacy
    Clause claim once the underlying state regulations were the subject of a final agency approval, legitimate

17  concerns arise as to viability of Plaintiff's instant preemption claim.  <u>See also</u> <u>Managed Pharmacy Care v.</u>
    <u>Sebelius</u>, ---F.3d---, 2012 WL 6204214 (9th Cir. Dec. 13, 2012) (refusing to decide whether the plaintiff's

18  Supremacy Clause challenge survives the subsequent "final action" by a federal agency, but suggesting
    that the Ninth Circuit would likely "not endorse" the position allowing a preemption claim "where the

19  administrative agency charged with the implementation and enforcement of the statute has already
    acted").  On the other side, this Court also recognizes that <u>Douglas</u> and <u>Managed Pharmacy Care</u> are

20  distinguishable from the instant case because both cases concerned a final action by the agency "charged
    with the implementation and enforcement" of the federal statute with an allegedly preemptive effect.  <u>See</u>

21  <u>Douglas</u>, 132 S. Ct. at 1210 (the challenged state Medicaid regulation was approved by CMS which is a
    federal agency "charged with administering the Medicaid program"); <u>Managed Pharmacy Care</u>, 2012 WL

22  6204214, at *1, 14 (the Department of Health Care Services, a federal agency changed with
    implementation and enforcement of the federal Medicaid program, approved California's revisions to its

23  Medicaid program as consistent with federal Medicaid law).  By contrast, in the instant case, the EPA is
    not charged with the implementation and enforcement of the FAAA which, according to CDTOA, preempts

24  the challenged Truck and Bus Regulation.  However, in light of this Court's conclusion that it no longer
    retains subject matter jurisdiction over this action after EPA's approval of the Regulation as part of

25  California's SIP, the Court need not decide whether Plaintiff's preemption challenge remains viable in light
    of EPA's approval of the challenged state Regulation.  The Court relies on <u>Douglas</u> solely for the purpose

26  of emphasizing that the concerns raised by the Supreme Court as to conflicting decisions from different
    branches of the federal government on the same issue are present in the instant litigation, which warrants

27  channeling this action to the court of appeals.  Whether Plaintiff can maintain its preemption claim or
    whether, as suggested by Defendants, the Court must now harmonize the Truck and Bus Regulation and
    the FAAA, the proper forum for such determination is in the circuit court.

28

1    In sum, although Plaintiff is technically correct that it's complaint does not present

2    a direct challenge to the EPA approval of California's SIP revision, "[t]he answer to the

3    jurisdictional question lies not in determining which of the parties' characterizations

4    makes better sense semantically, but in determining which better satisfies the policies

5    underlying the CAA's jurisdictional scheme."  See Natural Res. Defense Council,

6    788 F. Supp. at 273.  Were this Court to decide that the Truck and Bus Regulation is

7    preempted by the FAAA, such a decision would undermine the validity of EPA's final

8    action and would amount to an implicit repeal of a portion of the EPA-approved SIP.

9    Proceeding with this action would also undercut the special judicial review process

10   created by Congress for challenging federally-approved SIP measures and could result

11   in potentially inconsistent or redundant interpretations of federal law by different courts

12   and EPA.  If CDTOA disagrees with a state regulation incorporated into an EPA-

13   approved SIP it "must follow appropriate federal procedures to revise it."  See Paisley,

14   2011 WL 3875992, at *5.  Because Plaintiff's instant challenge necessarily implicates the

15   EPA final action approving the Truck and Bus Regulation as part of California's SIP, it

16   cannot be litigated in this Court.

17

18   **B.  EPA is a necessary and indispensable party which warrants dismissal of Plaintiff's lawsuit**

19

20   Even if this Court were to retain subject-matter jurisdiction over Plaintiff's

21   Supremacy Clause claim despite EPA's final action of approving the SIP revision

22   incorporating the challenged Truck and Bus Regulation, the Court would dismiss this

23   action because it finds that the EPA is a necessary and indispensable party under

24   Federal Rule of Civil Procedure 19.

25   ///

26   ///

27   ///

28   ///

1    In relevant part, Rule 19(a) provides:

2       A person who is subject to service of process and whose
        joinder will not deprive the court of jurisdiction over the
3       subject matter of the action shall be joined as a party in the
        action if (1) in the person's absence complete relief cannot be
4       accorded among those already parties, or (2) the person
        claims an interest relating to the subject of the action and is
5       so situated that the disposition of the action in the person's
        absence may (i) as a practical matter impair or impede the
6       person's ability to protect that interest or (ii) leave any of the
        persons already parties subject to a substantial risk of
7       incurring double, multiple, or otherwise inconsistent
        obligations by reason of the claimed interest. . . .  If the
8       joined party objects to venue and joinder of that party would
        render the venue of the action improper, that party shall be
9       dismissed from the action.

10   Rule 19(b) provides that if it is not feasible for the court to join a person meeting

11   the requirements of Rule 19(a), the Court

12      . . . shall determine whether in equity and good conscience
        the action should proceed among the parties before it, or
13      should be dismissed, the absent person being thus regarded
        as indispensable. The factors to be considered by the court
14      [in determining whether a party is indispensable] include: first,
        to what extent a judgment rendered in the person's absence
15      might be prejudicial to the person or those already parties;
        second, the extent to which, by protective provisions in the
16      judgment, by shaping of relief, or other measures, the
        prejudice can be lessened or avoided; third, whether a
17      judgment rendered in the person's absence will be adequate;
        fourth, whether the plaintiff will have an adequate remedy if
18      the action is dismissed for nonjoinder.

19   Therefore, Rule 19 requires the Court to make three successive inquiries.  First,

20   the Court "must determine whether a nonparty should be joined under Rule 19(a)," i.e.,

21   whether the absent party is "necessary."  E.E.O.C. v. Peabody W. Coal Co., 400 F.3d

22   774, 779 (9th Cir. 2005).  If the Court determines that an absent party is a "necessary

23   party" under Rule 19(a), "the second stage is for the court to determine whether it is

24   feasible to order that the absentee be joined."  Id.  "Finally, if joinder is not feasible, the

25   court must determine at the third stage whether the case can proceed without the

26   absentee, or whether the absentee is an 'indispensable party' such that the action must

27   be dismissed."  Id.

28   ///

1   A person is considered an "indispensable party" when "he cannot be made a party and,

2   upon consideration of the [Rule 19(b)] factors . . . , it is determined that in his absence it

3   would be preferable to dismiss the action, rather than to retain it." Id. at 780.

4           The inquiry under Rule 19 is "a practical one and fact specific . . . and is designed

5   to avoid the harsh results of rigid application." Makah Indian Tribe v. Verity, 910 F.2d

6   555, 558 (1990) (citations omitted).  The moving party, here Defendants, has the burden

7   of persuasion in arguing for dismissal. Id.  As detailed below, the Court finds that

8   Defendants have met their burden of demonstrating that the EPA is a necessary party

9   whose joinder is infeasible, and in whose absence the present action should be

10  dismissed.

11
                        **1. Whether EPA is a necessary party**
12

13          As the Ninth Circuit explained, "[t]here is no precise formula for determining

14  whether a particular non-party is necessary to an action." Confederated Tribes of

15  Chehalis Indian Reservation v. Lujan, 928 F.2d 1496, 1498 (9th Cir. 1991) (internal

16  citations and quotations omitted).  "The determination is heavily influenced by the facts

17  and circumstances of each case." Id.  In conducting this analysis, the Court must

18  examine whether it "can award complete relief to the parties present without joining the

19  non-party" or, alternatively, "whether the non-party has a 'legally protected interest' in

20  [the] action that would be 'impaired or impeded' by adjudicating the case without it."

21  Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony, Cal. v. City of

22  Los Angeles ("Paiute-Shoshone Indians"), 637 F.3d 993, 997 (9th Cir. 2011) (internal

23  citations omitted).  If the Court answers either question in the affirmative, the absent

24  party is a "required party" under Rule 19(a). Id.

25          The "complete relief" factor considers whether the existing parties can obtain

26  "consummate rather than partial or hollow relief" and whether there is a real possibility of

27  "multiple lawsuits on the same cause of action." Northrop Corp. v. McDonnel Douglas

28  Corp., 705 F.2d 1030, 1043 (9th Cir. 1983).

26

1  In its First Amendment Complaint, Plaintiff alleges that, if the Court refuses to enjoin the

2  Truck and Bus Regulation, its members will suffer irreparable harm, "including the loss of

3  the business and livelihoods, which in turn will proximately cause some members to be

4  at risk of losing their trucks, homes, cars, and the ability to purchase the basic

5  necessities of life." (FAC ¶ 6.) According to CDTOA, its members lack the financial

6  resources necessary to purchase and install the retrofit technology required by the

7  Regulation. (Id. ¶ 7.)

8        The Court fails to see how a favorable judgment will provide any relief for

9  Plaintiff's alleged injuries in light of the fact that the Regulation will remain enforceable by

10  EPA and the public as part of the EPA-approved SIP until EPA approves a SIP revision.

11  See Gen. Motors Corp., 496 U.S. at 540-41 (an EPA-approved SIP remains in place and

12  is federally enforceable until EPA approves the revision); Bayview Hunters, 366 F.3d at

13  695 (once EPA approves a SIP, it "becomes controlling and must be carried out by the

14  state"); Safe Air for Everyone, 488 F.3d at 1097 (once EPA approves a SIP, it cannot be

15  changed without EPA's approval).

16        CDTOA itself admits that "any adjudication by this Court in this case will

17  necessarily not be binding on EPA, because [EPA's] approval of the SIP was not raised

18  by plaintiff and plaintiff is not seeking in this forum any adjudication relating to the SIP."

19  (Pl.'s Suppl. Brief, at 2-3.) Plaintiff also concedes that, "[a]s a practical matter, it may

20  well be the case that striking down the state regulation does not afford plaintiffs complete

21  immunity from federal enforcement." (Id. at 3.) Even Plaintiff, then, takes the position

22  that any decision of this Court will not affect EPA's ability to enforce the SIP. Thus, it

23  appears that CDTOA can obtain no practical relief for its alleged injury when its

24  members will still be required to comply with the challenged regulatory requirements

25  pursuant to the EPA-approved SIP incorporating the Truck and Bus Regulation.

26  ///

27  ///

28  ///

1    Judicial decisions exploring the redressibility element of standing are especially

2  instructive in evaluating whether Plaintiff can obtain any practical relief for its alleged

3  injuries in this action.[10]   As the Ninth Circuit explained, there can be no redressibility

4  where the plaintiff's "prospective benefits depend on an independent actor who retains

5  'broad and legitimate discretion the courts cannot presume either to control or to

6  predict.'"  Glanton ex rel. AICOA Prescription Drug Plan v. AdvancePCS Inc., 465 F.3d

7  1123, 1125 (9th Cir. 2006) (quoting ASARCO, Inc. v. Kadish, 490 U.S. 605. 615 (1989)).

8  One of the basic principles of law is that "a person who is not a party to an action is not

9  bound by the judgment in that action.'"  Leu v. Int'l Boundary Comm'n, 605 F.3d 693, 695

10 (9th Cir. 2010).  Accordingly, the redressibility element of standing is not satisfied

11 "[w]here redress of a plaintiff's harms depends on independent decisions of

12 governmental entities not a party to the pending lawsuit."  San Joaquin River Group

13 Auth. v. Nat'l Marine Fisheries, 819 F. Supp. 2d 1077, 1097 (E.D. Cal. 2011) (citing

14 Lujan, 504 U.S. at 568-71).

15    The present case involves a situation where, even if Plaintiff succeeds in its

16 preemption challenge to the Truck and Bus Regulation, the relief that Plaintiff seeks will

17 still depend on independent decisions by the EPA, which is not a party to this litigation,

18 and which retains "broad and legitimate discretion" to demand CDTOA' members to

19 comply with the Regulation's requirements.  See Glanton, 465 F.3d at 1125.  Thus, from

20 the practical standpoint, Plaintiff can obtain nothing but a "hollow" relief, see Northrop

21 Corp., 705 F.2d at 1043, absent a challenge to the EPA-approved SIP incorporating the

22 challenged Truck and Bus Regulation.

23 _____

24    [10] Standing is a judicially created doctrine that is an essential part of the case-or-controversy
     requirement of Article III.  Pritikin v. Dept. of Energy, 254 F.3d 791, 796 (9th Cir.2001).  "To satisfy the
25 Article III case or controversy requirement, a litigant must have suffered some actual injury that can be
     redressed by a favorable judicial decision."  Iron Arrow Honor Soc. v. Heckler, 464 U.S. 67, 70 (1983).
26 Whether Plaintiff has standing is not at issue in this litigation, because standing is determined at the
     initiation of the lawsuit (when CDTOA undisputedly could demonstrate redressibility).  See Jacobs v. Clark
27 Cnty. Sch. Dist., 526 F.3d 419, 425 (9th Cir. 2009) ("[S]tanding is determined based on the facts as they
     existed at the time the complaint was filed.") (internal quotation marks omitted).  However, cases
28 discussing the redressibility element of standing are instructive in determining whether Plaintiff can obtain
     any practical relief for its injuries if the Court agrees to proceed with this litigation in EPA's absence.

1   Accordingly, given EPA's enforcement power and the fact that the EPA must approve

2   any changes to the state program incorporated into California's SIP, it is necessary to

3   join EPA in any action challenging a component of that SIP.

4          Alternatively, in determining whether an absentee is a "necessary" party under

5   Rule 19, the Court may also consider "whether the non-party has a 'legally protected

6   interest' in [the] action that would be 'impaired or impeded' by adjudicating the case

7   without it." Paiute-Shoshone Indians, 637 F.3d at 997 (internal quotations and citations

8   omitted).  The absentee's interest "must be more than a financial stake, and more than

9   speculation about a future event." Makah Indian Tribe, 910 F.2d at 558 (citations

10   omitted).  Impairment of the absentee's interest "may be minimized if the absent party is

11   adequately represented in the suit." Id. (internal citations omitted).  In assessing whether

12   an existing party can adequately represent the interests of the absent party, courts

13   consider the following three factors: (1) "whether the interests of a present party to the

14   suit are such that it will undoubtedly make all of the absent party's arguments,"

15   (2) "whether the party is capable of and willing to make such arguments," and "whether

16   the absent party would offer any necessary element to the proceedings that the present

17   parties would neglect." Shermoen v. United States, 982 F.2d 1312, 1318 (9th Cir. 1992)

18   (internal citations and quotations omitted).

19          "A public agency has an interest in a lawsuit that could result in the invalidation or

20   modification of one of its . . .  rules [or] regulations." E.E.O.C., 610 F.3d at 1082 (finding

21   that the Secretary of the Department of the Interior had interest in a claim that sought to

22   enjoin a lease term that the Secretary had approved and maintained oversight).  Thus,

23   as NRDC correctly points out, the EPA has a strong interest "in defending and enforcing

24   air pollution control laws it approved and which are federal law."  (NRDC Rule 19 Suppl.

25   Brief, ECF No. 71, at 5.)  As analyzed above, the Court's decision invalidating the Truck

26   and Bus Regulation on preemption grounds would necessarily upset the EPA's final

27   decision approving the Regulation as part of California's SIP and would create practical

28   problems with SIP's enforceability.

1    Before approving the Regulation as part of California's SIP, the EPA concluded that

2    there were no obstacles to the Regulations' enforceability under either state or federal

3    law.  76 Fed. Reg. at 40658.  Thus, a contrary decision by this Court would create

4    doubts as to the appropriateness of the EPA's determination.

5         Further, if the Court were to invalidate the Truck and Bus Regulation on

6    preemption grounds, the State of California might not meet federal air quality standards

7    under the CAA.  In this case, the EPA may need to take over California's air quality

8    planning by promulgating a Federal Implementation Plan ("FIP").  See 42 U.S.C.

9    § 7410(c)(1)(B) ("The Administrator shall promulgate a Federal implementation plan at

10   any time within 2 years after the Administrator . . . disapproves a State implementation

11   plan submission in whole or in part"); NRDC v. Browner, 57 F.3d 1122, 1124 (D.C. Cir.

12   1995) (a FIP "rescinds state authority to make the many sensitive technical and political

13   choices that a pollution control regime demands.").  Thus, the EPA has interests in this

14   litigation going beyond a general desire to uphold California's Truck and Bus Regulation.

15        Moreover, the existing parties cannot adequately represent EPA's interests in this

16   matter.  Even though Plaintiff adamantly denies that its lawsuit implicates EPA's decision

17   to approve California's SIP,[11] the analysis above clearly demonstrates that Plaintiff's

18   present challenge necessarily calls into question the correctness of EPA's decision that

19   California has legal authority to implement the Regulation.  Neither ARB nor NRDC can

20   provide the legal basis for EPA's decision to approve the Truck and Bus Regulation as

21   part of California's SIP.

22        Based on the foregoing, the Court concludes that EPA is a "required" party under

23   Rule 19.

24   ///

25   _____

26   [11] For its part, Plaintiff again argues that the EPA is not a necessary party because "the sole count in the complaint concerns the rule 'promulgated by ARB,' and not any other rule promulgated by any other

27   agency."  (Pl.'s Rule 19 Suppl. Brief, at 1.)  As with Plaintiff's other arguments, however, Plaintiff's position here again hinges on the Court ignoring EPA approval of the Truck and Bus Regulation as part of

28   California's SIP.

1

**2. Whether EPA can be joined as a party**

2

3      "Rule 19(b) sets forth the three circumstances in which joinder is not feasible:

4   when venue is improper, when the absentee is not subject to personal jurisdiction, or

5   when joinder would destroy subject matter jurisdiction." E.E.O.C., 400 F.3d at 779.  The

6   parties appear to agree that the EPA cannot be joined in this litigation because it would

7   deprive this Court of subject-matter jurisdiction over this action pursuant to 42 U.S.C.

8   § 7407(b).  (See Pl.'s Rule 19 Brief, at 3; NRDC's Rule 19 Brief, at 7.)

9

**3.  Whether EPA is an indispensable party**

10

11      Accordingly, the Court turns to the only remaining question under Rule 19, which

12   is whether "in equity and good conscience, the action should proceed among the

13   existing parties or should be dismissed" because the EPA is an indispensable party.

14   Fed. R. Civ. P. 19(b).  "Indispensable parties under Rule 19(b) are persons who not only

15   have an interest in the controversy, but an interest of such a nature that a final decree

16   cannot be made without either affecting that interest, or leaving the controversy in such a

17   condition that its final termination may be wholly inconsistent with equity and good

18   conscience." E.E.O.C., 400 F.3d at 780 (internal quotation marks and citation omitted).

19   Pursuant to Rule 19(b), this Court will consider:

20          (1) the extent to which a judgment rendered in the person's
            absence might prejudice that person or the existing parties;
21          (2) the extent to which any prejudice could be lessened or
            avoided by (A) protective provisions in the judgment, (B)
22          shaping the relief, or (C) other measures; (3) whether a
            judgment rendered in the person's absence would be
23          adequate; and (4) whether the plaintiff would have an
            adequate remedy if the action were dismissed for
24          nonjoinder.[12]

25   ///

26   ///

27   _____

28   [12] Plaintiff, having taken the hard-line position that the EPA is not a necessary party, does not
     address these factors.

31

1  With respect to the first factor, it is clear that proceeding with this case in EPA's absence

2  would prejudice both ARB and CDTOA by exposing them to the risk of inconsistent

3  obligations.  As discussed above, if CDTOA prevails, ARB will be enjoined from

4  enforcing the Regulation notwithstanding the fact that the State of California is required

5  to enforce the Regulation under federal law.  See Bayview Hunters, 366 F.3d at 695

6  (once EPA approves a SIP, it "becomes controlling and must be carried out by the

7  state").  As correctly pointed out by NRDC, such a situation will amount to placing

8  California "between the proverbial rock and a hard place."  (NRDC's Rule 19 Brief, at 6)

9  (quoting E.E.O.C., 610 F.3d at 1082).  Likewise, CDTOA members will face inconsistent

10  obligations as a result of this Court's decision in Plaintiff's favor because, on one side,

11  they will succeed in enjoining the Regulation on preemption grounds but, on the other

12  side, will nevertheless be required to comply with the Regulation's requirements

13  pursuant to California's SIP.  From the practical perspective, proceeding with this

14  litigation in EPA's absence defies logic.

15      With respect to the second and third factors, the Court is not aware of any

16  actions, short of joining the EPA, that would lessen prejudice to both EPA and the

17  existing parties, or enable the Court to grant Plaintiff adequate relief.

18      The last factor under Rule 19(b) directs the Court to consider whether the plaintiff

19  would have an adequate remedy if the action were dismissed for nonjoinder.  Although

20  the Court should be "extra cautious" before dismissing a case "if no alternative is

21  available to the plaintiff," "lack of an alternative forum does not automatically prevent

22  dismissal of a suit."  Makah Indian Tribe, 910 F.2d at 560.  This is especially true where

23  the plaintiff at one time had an alternative forum for resolution of its claims, but failed to

24  utilize it.  See Paiute-Shoshone Indians, 637 F.3d at 1000-01.  In Paiute-Shoshone

25  Indians, the Ninth Circuit affirmed the district court's dismissal of an action where the

26  United States could not be joined, and stated:

27  ///

28  ///

1
2
3
4
5
6

> Plaintiff claims a "strong interest" in having this forum because it has no other avenue available for establishing its right to the Bishop Tribal Land. That is a dilemma of Plaintiff's own making. Congress gave Plaintiff an opportunity to adjudicate its dispute with the United States but Plaintiff missed that opportunity. Even accepting Plaintiff's claim that it cannot obtain relief in any other forum today, the fact that Plaintiff at one time had a "satisfactory alternative forum" but failed to take advantage of it significantly lessens the strength of Plaintiff's interest in having this action go forward.

7   Id.

8      Here, an alternative forum is (or was)[13] provided for Plaintiff to litigate its claims

9   because, as fully explained above, section 307(b) of the CAA allows the court of appeals

10  to exercise jurisdiction over Plaintiff's challenge to both the EPA-approved SIP and to

11  the state Regulation incorporated into the SIP. See 42 U.S.C. § 7607(b)(1). Moreover,

12  CDTOA could have participated in EPA's approval process for the Regulation and voiced

13  its preemption concerns before the Regulation became part of California's SIP but failed

14  to do so. The fact that Plaintiff chose to forego those opportunities further supports this

15  Court's determination that equity and good conscience demand dismissal of this action.

16      Plaintiff argues that it could not obtain a satisfactory remedy by suing EPA

17  pursuant to section 307 of the CAA because the Truck and Bus Regulation would stay

18  on the books as California state law even if the court of appeals invalidates EPA's final

19  rule approving revisions to California's SIP. (Pl.'s Suppl. Brief, at 8.) First of all,

20  Plaintiff's reasoning equally (if not more so) applies to the present litigation because,

21  regardless of Plaintiff's success in this matter, the SIP incorporating the Truck and Bus

22  Regulation will remain enforceable against the CDTOA members. Second, the Court

23  disagrees that challenging the SIP in the court of appeals would not provide Plaintiff with

24  adequate remedy. Under the CAA, if a SIP measure fails to comply with the CAA

25  because, for instance, the State lacks legal authority to implement the measure, the EPA

26  must require the State to correct the inadequacy in a SIP revision.

27
28
> [13] The Court need not analyze whether the time for bringing an action under section 307 of the CAA has expired, including whether the applicable statute of limitations may be tolled. See 42 U.S.C. § 7607(b)(1).

1   42 U.S.C. § 7410(k)(5).  As applied in this case, if CDTOA sued EPA and demonstrated

2   that the Truck and Bus Regulation is preempted by the FAAA, California would need to

3   revise its SIP by proposing a non-preempted measure for achieving federal air quality

4   standards.  Finally, the Court is not aware of any reasons why the court of appeals would

5   be unable to issue a ruling invalidating not only the EPA-approved SIP but also the

6   Truck and Bus Regulation incorporated into the SIP if Plaintiff demonstrates that the

7   Regulation is indeed preempted by the FAAAA.  Accordingly, proceeding with the

8   present lawsuit in the court of appeals, unlike in this Court, could potentially afford

9   Plaintiff complete relief for its alleged injuries.

10        In conclusion, absent EPA's joinder, this Court cannot grant any practical relief to

11   Plaintiff, EPA's interests in defending the Regulation may be impaired, and the existing

12   parties may be subject to inconsistent and conflicting obligations.  Thus, EPA is a

13   necessary party in this litigation.  However, EPA's joinder is not feasible because,

14   pursuant to 42 U.S.C. § 7607(b)(1), claims challenging an EPA-approved SIP or a state

15   measure incorporated therein must be brought in the court of appeals.  After assessing

16   the situation in realistic and practical terms, the Court finds that this action cannot

17   proceed in EPA's absence and should be dismissed.

18

19                                        **CONCLUSION**

20

21        For the reasons stated above, the Court finds that it can no longer exercise

22   subject-matter jurisdiction over CDTOA's preemption challenge in light of EPA's approval

23   of the challenged Truck and Bus Regulation as part of California's state implementation

24   plan.  Therefore, the Court DISMISSES this case WITHOUT PREJUDICE.  Alternatively,

25   the Court finds that the EPA is a necessary and indispensable party under Federal Rule

26   of Civil Procedure 19, which warrants dismissal of this case.

27   ///

28   ///

1    In light of this ruling, the Court does not reach the merits of the parties' cross-motions for

2    summary judgment and DENIES them as MOOT.

3          The Clerk of the Court is directed to close this case.

4          IT IS SO ORDERED.

5    Dated:  December 19, 2012

6

7                                              MORRISON C. ENGLAND, JR., CHIEF JUDGE
                                               UNITED STATES DISTRICT COURT
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              35